## CLARK *vs.* CLARK.

A grant of a divorce is, in this state, a judicial proceeding.

The legislature may provide by general laws for the dissolution of existing marriages, if such laws operate upon facts and transactions occurring after their passage.

But a statute which attempts to confer authority upon the court to grant a divorce for matters already past, and which, at the time when they occurred, furnished no ground for a dissolution of the marriage, or for other legal proceeding, is a retrospective law for the decision of a civil cause, and therefore unconstitutional.

LIBEL for a divorce, alleging that the libellant was lawfully married to Mary Ann Adams, at Dover, September 10, 1835, and that he hath uniformly kept his marriage covenants ; but that said Mary Ann, regardless, &c., did unnecessarily, without sufficient cause, and against the consent of the libellant, leave him on the 28th of February, 1836 ; and has, from that day hitherto, refused to cohabit with him, unnecessarily, and without sufficient cause, and against his consent.

The libellee acknowledged personal notice, but made no defence.

The evidence tended to show that on the 29th of February, 1836, James Adams, a brother of the libellee residing in Maine, procured a conveyance to carry her from her moth-

Clark *v*. Clark.

er's, in Rochester, where the parties resided—that she left, carrying her trunks and baggage, without the knowledge of her husband, who was then absent, and has since resided with her brothers, in Maine and Boston—that the libellant was a kind, attentive and affectionate husband—and that no allegations had been made against his conduct by the wife or her friends.   A few days after her desertion, the libellant found her at the house of her uncle in Dover, and on enquiry of her why she left in the manner above described, she replied she thought it was best, and refused to return.

*Tebbets*, for the libellant.

PARKER, C. J.    This is one among a number of applications under the statute of July 6, 1839, to regulate divorces, and providing, among other causes, that " Where either of the parties shall unnecessarily, without sufficient cause, and against the consent of the other, leave the other, or has heretofore left the other, and shall unnecessarily, and without sufficient cause, refuse, or has heretofore refused, to cohabit with the other, for the space of three years together, it shall be deemed and taken to be a sufficient cause of divorce, provided such cause shall continue to exist at the time when the petition for a divorce shall be filed."

Upon the policy or impolicy of granting a divorce for mere desertion and refusal to cohabit, we have not to decide.

In some governments no divorce *a vinculo* is granted for any cause.   Others make adultery only an exception to that rule ; but the policy of this state has never been quite so far restrictive.   Cases of great hardship often exist, where wives are deserted by their husbands, and left to struggle with the difficulties and disabilities necessarily attendant upon such a situation ; and cases of this character undoubtedly have appealed very strongly to the sympathies of the legislature.

This case is of a different character, but addresses itself perhaps not the less forcibly to a sense of justice.   One of

the evils resulting from a dissolution of a marriage is, that it usually leaves the guilty party free to form another connection, and for that reason the guilt is sometimes deliberately contracted, with the design and purpose of producing a divorce. If a divorce may be decreed in this instance, it will operate to release the libellee from vows and obligations which, it would seem, she has violated very lightly and recklessly; and it will empower her to contract another marriage, the duties of which may be as suddenly and as criminally discarded; but, on the other hand, there is something of humanity in discharging the libellant from his obligations to one who has proved herself so unworthy of his confidence and affection.

The language of the statute is explicit enough. It embraces cases which are past, as well as those which shall occur hereafter. In this case, the desertion has continued up to the present time; but what has occurred since the passage of the statute can make no difference, three years not having elapsed since that period. The statute has no provision that where a desertion has existed for a certain period before its passage, and shall continue for a certain time after, giving reasonable time for a return, that the whole matter shall be a cause of divorce. It is of no consequence, therefore, that this libel was not filed until some time had elapsed after the passage of the act. If a divorce may be granted upon this libel, one might have been granted had it been filed on the next day after the act was passed.

We come, then, to the broad question, whether the legislature can authorize this court to grant a divorce for any matter which was entirely past at the time of the passage of the act, and which did not, when it arose, furnish any ground for such a proceeding.

A perfected negotiation, or treaty, of marriage, is undoubtedly a civil contract. 2 *N. H. Rep.* 268, *Londonderry* vs. *Chester*. It contains all the essential characteristics of a contract, and it has something superadded. It has been said

to be a matter of civil institution, and to be the very basis of the whole fabric of civilized society; by which, of course, is not intended that it is any way a part of the structure of civil government, but that it is a contract, and relation, necessary to the existence of civilized society, and to be regulated accordingly—as to its continuance and obligations—not by the mere will of the parties, but by the general provisions of the municipal law. It is a contract of a very peculiar character; and on account of the interest which society has in it, public notice that the parties intend to enter into the relation of husband and wife is required in some states, and in others a license is to be taken out. In many instances the law prescribes what persons may solemnize the marriage, or give the public sanction of the government to the agreement, and prohibits others from interfering, under penalties. But in most governments the contract is held to be valid and binding, notwithstanding it is entered into with no rites or ceremonies. It may be said that to a certain extent it has made its own law—the evil consequences of too great restriction upon it having sometimes induced the legislative authority to modify its regulations, and the judicial to admit certain exceptions in relation to it, particularly respecting the application of the *lex loci contractus,* which are not allowed in other matters of contract. *Vide* 2 *Kent's Com.* 77–80, *Lec.* 26; *Story's Confl. of Laws* 116.

And the peculiarities of the contract, and of the relations and duties inseparable from its existence, have not only induced civilized governments to regulate, in a greater or less degree, the manner in which the contract is to be perfected, or celebrated; but have also required corresponding peculiarities in the remedies for enforcing its obligations, or proceeding in some cases for a breach of them. For a breach of some of the duties arising from it, no government provides a legal remedy. In other cases, proceedings may be had, in some governments, for a restitution of conjugal rights. Unlike most other contracts, damages are not deemed an

appropriate remedy for a breach of the obligations arising out of it ; but the suffering party, in the grosser instances of their infraction, has been relieved by a divorce from bed and board, or by an entire dissolution of the marriage, annulling all further obligation of the contract. A dissolution of a marriage, however, in the lifetime of the parties, is usually attended with such injurious consequences to society, and to the offspring of the marriage, that civilized governments do not permit the parties to dissolve it at their pleasure. In England a divorce *a vinculo* is only to be obtained by special act of parliament ; but a divorce *a mensa et thoro* may be sought through the action of the ecclesiastical courts.

In some states of the union, divorces are granted by the legislature alone. It was so here until the adoption of the constitution, which took effect in June, 1784.

From the nature of the contract, and the manner in which the relation affects the public interest, it has been deemed competent for the government to provide for this dissolution of it, on the application of one party, against the consent of the other ; and a contract of marriage is understood to be subject to this power. It has been said that it " may be abrogated by the sovereign will, either with or without the consent of both parties, whenever the public good, or justice to both, or either of the parties, will thereby be subserved." If by this it is intended that the sovereign power may dissolve a marriage, regularly contracted and celebrated according to law, without the consent of either of the parties, and without any breach of the contract, the proposition is not admitted.

There is no doubt that the legislative power may, by law, provide, in certain cases, for the dissolution of existing marriages. And this may be done upon facts and transactions, past at the time of the passage of the act, in those governments where divorces are obtained only by a special act of the legislature. How far the legislative power ought, in such case, to be considered as restricted, if at all ; and

Clark *v.* Clark.

whether a divorce can regularly be granted in such states, by the legislature, upon past transactions of a character never before deemed sufficient to justify a dissolution of the marriage, we need not enquire.

Notwithstanding marriage is a civil contract, it appears, from the nature of the obligations it imposes, from the appropriate remedies when they are violated, and from the reasons which must have actuated the framers of the constitution of the United States, that general laws, providing for the dissolution of existing marriages, but operating upon transactions subsequent to their passage, are not within the clause of that constitution, prohibiting the several states from passing any law impairing the obligation of contracts. If any thing more than this is to be understood by the incidental opinions expressed in *Dartmouth College* vs. *Woodward,* ( 1 *N. H. Rep.* 132, 4 *Wheat.* 629, 695, *S. C. in error,*) it seems only to be, that the legislature in those states where divorces are not regulated by general laws, may provide for divorces, by special acts, for causes which have been previously deemed good grounds of divorce, and perhaps for any causes within the discretion of the legislature. But it is not necessary to pursue this part of the subject.

The constitution of this state provides, that all causes of marriage, divorce, and alimony, " shall be heard and tried by the superior court, until the legislature shall by law make other provision." That the provision here intended, was a provision by ordinary legal enactment, for the action of some judicial tribunal, is not to be doubted ; and this gives to a grant of a divorce, here, the character of a judicial proceeding. The legislature, it is believed, have not, since that period, passed any special law granting a divorce, nor is it supposed to be within their constitutional power so to do.

The xxiii. article of the Bill of Rights denounces retrospective laws as " highly injurious, oppressive, and unjust," and declares that " no such laws should be made, either for the decision of civil causes, or the punishment of offences."

In *Woart* vs. *Winnick,* 3 *N. H. Rep.* 481, this court held, that this clause, so far as it applied to civil causes, "was intended to prohibit the making of any law prescribing new rules for the decision of existing causes, so as to change the ground of the action, or the nature of the defence." That was sufficient for the case then under consideration, which was in fact pending when the law then in question was passed. But the considerations there suggested evidently point to a broader application of it than one which would make it operative merely upon actions, or causes, pending in court at the time of the passage of the act. A law may be retrospective in its operation, if it affect an existing cause of action, or an existing right of defence, by taking away or abrogating a perfect existing right, although no suit or legal proceeding then exists. Of course it is not intended to deny the right of the legislature to vary the mode of enforcing a remedy; or to provide for the more effectual security of existing rights; or to pass laws which change existing rules, under which rights would be acquired by the lapse of a certain period of time, part of which has already passed. The statute of limitations may be changed by an extension of the time, or by an entire repeal, and affect existing causes of action, which by the existing law would soon be barred. In such cases the right of action is perfect, and no right of defence has accrued from the time already elapsed. But if a right has become vested, and perfect, a law which afterwards annuls or takes it away, is retrospective. Thus a law which should provide that promissory notes made payable on demand should be payable at the expiration of a year, and that no suit should be maintained upon them until the expiration of that time, if applied to existing contracts of that character, would be a retrospective law for the decision of a civil cause, not only in relation to actions then pending upon such contracts, but also as to all notes of that description then in existence. And so of any other law which impairs vested rights acquired by existing

Clark *v*. Clark.

laws. 1 *N. H. Rep.* 213, *Merrill* vs. *Sherburne.* To subject a party to the payment of damages, or to other loss or detriment, upon considerations entirely past, is within the principle. Thus a statute of this state, passed in 1805, made provision, that where there had been peaceable possession and actual improvement of land by virtue of a supposed legal title, under a *bona fide* purchase, for more than six years before the commencement of an action for the recovery of it, the tenant should be entitled to the increased value of the premises by virtue of buildings and improvements, if the demandant recovered. In an action brought in 1807, it was held that the act, applied to a possession existing, and to improvements made, prior to its passage, was a retrospective law, within the clause of the constitution already cited. 2 *Gall. R.* 105, *Society* vs. *Wheeler.*

A statute which attempts to confer authority upon the court to grant a divorce, for matters already past, and which, at the time when they occurred, furnished no ground for a dissolution of the marriage, or for other legal proceedings, is, in our view, clearly a retrospective law, and well entitled to the epithets applied to such laws in the constitution. On the supposition that the past matter, which is thus made the ground of a divorce, was of a character inconsistent with the perfect obligations of the marriage covenant, and such, therefore, as could not be justified, or even excused, in a court of morals; still, if it was not such as subjected the party, when it took place, to any penalty or punishment; or entitled the other party to any remedy; and, especially, if it was not such as then furnished any ground upon which a dissolution of those obligations could be sought or predicated; it must, by a law making it a ground for a divorce, have a different character and operation bestowed upon it. Its legal character would thereby be changed, and its effect enlarged. That which, if not of itself innocent, was not, when it occurred, such a breach of marital obligations as to warrant an interference with them, would be made

Clark *v.* Clark.

operative, not only to release one party from the further ob-
ligations of what is generally admitted to be a contract, but
would be made the means of depriving the other party of
the benefit of those obligations, and of rights of property de-
rived from them.   It would subject that party to loss and det-
riment for past acts, altogether by the retrospective operation
of the law which authorized and gave effect to the divorce.
Such a law cannot enforce the obligations of the marriage,
nor is it a provision relating to the remedy merely ; for what-
ever breach may have occurred, the obligation of the con-
tract still remains, and requires a prospective performance of
marital duties.   But the principle upon which the law must
be founded, would, if admitted, dissolve all marriages at the
will of the legislative power.

Desertion for three years, by the husband, coupled with
neglect to make suitable provision for the support and main-
tenance of the wife, where it was in his power so to do, has,
for a long period, furnished a sufficient cause for a dissolution
of the marriage, in this state.   But, under that statute, if the
husband had not pecuniary ability, there was no cause
for a divorce.   The present act makes desertion alone, by
either party, for the term of three years, if without sufficient
cause and against the consent of the other, a substantive
ground of divorce.   It is, therefore, a new cause ; and that
part of the act which attempts to make such desertion, then
past, sufficient, must, if enforced, impair vested rights, pro-
vided there are any vested rights in the existence of a mar-
riage.   We shall not add to the length of this opinion, by
attempting to show that such rights exist.

But in order to bring a law within the constitutional pro-
vision we are considering, it must be a law for the decision
of a civil cause, or for the punishment of an offence.

All retrospective laws are not within the prohibition, not-
withstanding the general terms of the first part of the arti-
cle.   They may be made for the mitigation of punishment.
*3 N. H. Rep.* 476.

Clark *v.* Clark.

That a retrospective law for a divorce operates oppressively and unjustly, however, tends to show that it is within the condemnation of the constitution.

"Regulations on the subject of marriage and divorce," it has been said, "are rather parts of the criminal than of the civil code." 10 *Mass. R.* 265, *Barber* vs. *Root.* And in the same opinion it is farther stated, that "A divorce, for example, in a case of public scandal and reproach, is not a vindication of the contract of marriage, or a remedy to enforce it; but a species of punishment, which the public have placed in the hands of the injured party to inflict, under the sanction, and with the aid of the competent tribunal; operating as a redress of the injury, where, the contract having been violated, the relation of the parties, and their continuance in the marriage state, has become intolerable or vexatious to them, and of evil example to others."

If a proceeding for a divorce was to be regarded as a part of the criminal code, and the divorce itself as a punishment, a retrospective law for the purpose would be an *ex post facto* law, and thus clearly void.

We are inclined, however, to regard a petition, or libel, for a divorce, especially under our constitution and laws, as a proceeding in a civil cause. It may, in its result, partake, in some instances, of the character of a punishment of the offending party; but it is too true, in point of fact, that it is very often considered and felt to be otherwise. In all cases it operates upon the civil rights of the parties, and especially upon the rights of property. The husband is no longer bound to support the wife, or answerable for her acts; nor can he afterwards claim her services, or derive a title to her earnings, or to property which may descend to her. He loses the right to the income of her real estate. There is a corresponding change in the situation of the wife; and in addition to this, she may have, in some instances, a decree assigning to her a part of the property of the husband, or entitling her to a sum of money from him, which may be en-

Clark v. Clark.

forced by action, or, under our practice, by execution.   This is not as damages for the past, nor as a penalty ; for it is regulated more by the necessities of the wife, and the ability of the husband, than by the aggravation of the causes of divorce.   If it were a penalty, that would not show that the cause was not a civil cause, for penal actions belong to the civil side of the court.   3 *N. H. Rep.* 481.   Nor is the deprivation of the society of the injured party a mere punishment of the offender, in any case.   It results from the dissolution of the contract, by which it was originally secured. Where a disability to marry again, during the life of the injured party, is part of the effect of a divorce, it may perhaps be regarded as punishment ; but this does not necessarily accompany a divorce, nor does it result from one, in any case, in this state.   Where it does, it is only a denial of a right in the party to enter into another similar contract, so long as the previous one ought to have existed.   The proceeding, therefore, seems to have all the characteristics of a civil cause.

From the character of the contract, its appropriate remedies, when it is broken, may be had according to the law of the actual domicil of the parties at the time of the injury, and is not confined to the *lex loci contractus.*   But this does not prove that it is a criminal proceeding.   The matter is not prosecuted by the government, or for the government ; and there is neither fine or imprisonment, nor usually any incapacity or disability of any kind.   Forgiveness of the wrong by the party injured precludes any divorce, except upon some new violation of conjugal obligations.   *Quincy* vs. *Quincy, ante* 272.

And by the terms of the statute upon which this application is founded, whether the desertion be one before or after the passage of the act, and however long it may have continued, no divorce is to be had unless it continues up to the time of filing the libel.   And furthermore, for adultery, which constitutes one of the causes of divorce, a specific punish-

Clark *v.* Clark.

ment is provided in the criminal code.   These considerations seem to show, conclusively enough, that a divorce is not to be regarded as the punishment of the offender.   If it were so, two punishments would be prescribed for the offence of adultery.   And in confirmation of this view we have the express opinion of Chancellor Kent, which perhaps might well sustain the position, without any reasoning upon the subject. " The remedy by divorce," he says, " is purely a civil and private prosecution, under the control and at the volition of the party aggrieved, and he may bar himself of the remedy by his own act."   2 *Kent's Com.* 84, *Lec.* 27.

Considering a petition for a divorce as a civil and private prosecution, so much of the statute as purports to authorize a divorce on account of desertion which had occurred prior to its passage, must be held to be a retrospective law for the decision of a civil cause, and as such within the constitutional prohibition.

That part of the act which provides for divorces on account of desertion and refusal to cohabit for three years after its passage, is not objectionable, notwithstanding it may operate upon existing marriages.   Regulations intended to enforce the obligations of the contract in future, impair no vested rights.   The contract of marriage, it is well understood, is subject to them, and all persons may avoid their operation by an adherence to the duties imposed by the contract itself.

And we have no doubt that the legislature may so amend the act that a continuance of a prior desertion, for a period after the passage of the new statute long enough to give a reasonable time for a return, and a resumption of marital duties, shall be a good cause for a dissolution of the marriage.

*Libel dismissed.*