## PICKERING *v.* PICKERING.

Upon several replications filed without leave of court, the whole were, upon demurrer, set aside for the double pleading, though some of them, standing alone, would have been good.

The Statute of 1847, ch. 307, allowing several replications, does not apply to suits commenced before its passage.

A plea of matter of defence arising after the commencement of the suit, should conclude with prayer as to the *further* maintenance of the suit. But judgment, upon general demurrer, will be rendered according to the substance of the plea, without reference to its conclusion.

Upon a plea of arbitrament and award, upon submission by a mutual bond, a replication denying the submission, properly tenders issue upon the execution of the bond.

The allegation, in such a plea, that the arbitrators having appointed time and place of hearing, and "having given due notice thereof," met, &c., is a sufficient averment of notice.

A replication to a plea of arbitrament and award, alleging generally that the award "was made upon false and corrupt testimony, procured and laid before the arbitrators by the defendant," there being no misconduct imputed to the arbitrators, is bad.

Arbitrament and award may be pleaded before performance of the award by the party, where the submission is entered into with mutual bonds to perform.

ASSUMPSIT.    The defendant pleaded arbitrament and award, *pius darrien continuance.*    The substance of the plea was that the parties, on the tenth day of February, 1848, entered into mutual bonds to submit and refer the subject matter of the suit, and all other questions between them, to certain arbitrators named, and to perform their award: that the arbitrators " having appointed the 31st day of March, A. D. 1848, and the Franklin House in Portsmouth, as the time and place when and where they would hear the parties, having given due notice thereof, and met in pursuance thereof," heard the parties and made their award that the plaintiff recover of the defendant the sum of $181.72, considered and intended by them as the balance due on a full settlement of all claims and accounts between the parties, including all costs, " which said award was duly signed by said arbitra-

tors, and then and there ready to be delivered to said parties in difference, of which the plaintiff had due notice, and this she is ready to verify. Wherefore she prays judgment if the plaintiff his action aforesaid thereof against her ought to have or maintain, and for her costs."

The plaintiff filed four separate replications :

1st. That the parties " did not, on said tenth day of February, 1848, bind themselves by mutual bonds of submission, bearing date on said tenth day of February, to refer said action, and all demands between the said parties, to the arbitrament and determination of," &c.

2d. That the arbitrators did not make and publish any award, within the time limited in the submission.

3d. That the defendant had not, at any time since the making of the alleged award, paid or offered to the plaintiff the sum awarded him.

4th. That the award alleged was made upon false and corrupt testimony, procured and laid before the arbitrators by the defendant.

The defendant filed a demurrer, assigning for causes :

1st. That the plaintiff had no right to plead more than one replication.

2d. That he had pleaded several and separate replications.

3d. That the first replication was evasive, denying only the execution of the bonds, without denying the submission as set forth.

4th. That the third replication was insufficient in law.

5th. That the fourth replication did not set forth the false and corrupt testimony alleged to have been procured and laid before the arbitrators.

6th. That the replications were not pleaded by leave of the court.

Upon joinder in demurrer, the questions arising upon the pleadings were reserved for this court.

*John S. Wells*, for the plaintiff.

*James W. Emery*, for the defendant.

WILCOX, J. The right to file several and separate replications, which the plaintiff in this case has assumed, is one that by long continued practice in this State, (imitated, according to the opinion in *Chapman* v. *Sloan*, 2 N. H. Rep. 464, from the English practice under the statute of 3 and 4 Anne,) depended upon the permission of the court, which was entirely within its discretion, however well settled the principles may have been upon which that power of the court would be exercised. The statute of 1847, ch. 307, has rendered the right independent of the court, and conferred it absolutely, in all cases. But as that statute was passed since the commencement of this action, its present application is questioned.

Retrospective laws for the decision of civil causes being forbidden by the bill of rights, all laws, otherwise unobjectionable, are, and must be, consequently, so limited in their operation as not to be obnoxious to the spirit and principle of the prohibition. Its interpretation has been the subject of numerous decisions, and has become well defined. It applies not only to those laws which relate, immediately and primarily, to the rights of persons and property, but to those subsidiary laws, also, of which the object is to afford the means, and prescribe the mode of the enforcement of the former. And if, under either of these classes of laws, rights have become vested and perfect, to permit them to be affected by a change in the laws, is, so far, to give the altered or new law a retrospective action. Therefore it was held in *Woart* v. *Winnick*, 3 N. H. Rep. 473, that a repeal of the statute of limitations did not apply to an action then pending ; and in *Roby* v. *West*, 4 N. H. Rep. 287, that a defendant cannot be deprived of a defence by a statute passed after the commencement of the suit. An opin-

ion is however expressed in *Bacon* v. *Callender*, 6 Mass. Rep. 309, that *if* it was competent for the legislature of Massachusetts to pass a certain statute (of 1807, ch. 74, called the "limitation and settlement act,") to affect actions founded upon certain claims then existing, a point which was not contested at the bar, its provisions might apply with equal authority to such actions then pending. It is probable that all the cases in which this doctrine has been held, that the provisions of a statute are applicable to suits pending at the time of its passage, so strongly discountenanced by the English cases, by Chief Justice *Kent*, in *Dash* v. *Van Kleeck*, 7 Johns. 488, and by Justice *Story*, in *Society, &c.* v. *Wheeler*, 2 Gall. 139, have proceeded upon such manifest intention of the statute, upon the distinction between *ex post facto* and other retrospective laws, adverted to by the dissenting judges in *Dash* v. *Van Kleeck,* and upon the ground that neither the constitution of the United States, nor of the respective States in which the decisions have been given, in terms forbade all retrospective laws. But whatever may have been the basis of that opinion, the language of the twenty-third section of our bill of rights is explicit, and the decisions upon it have been uniform. The question with us is whether any right, such as the law recognizes, has been acquired under the preëxisting law, which would be taken away by the succeeding one.

The principle of the twenty-third section is that when an act has been done in view of existing laws, the reasonable expectation of, and reliance upon their permanence, should not be disappointed; that as calculations for the future must be made from the present, it is but just that where an act has been done involving consequential benefit or injury, as the laws shall abide or change, that the actor be protected as far as practicable from the effect of the change; and the " vested right " arising from any act, which is preserved by law, is recognized upon this principle.

Though rules of pleading are in their nature subsidiary

and secondary, that is, though they relate merely to the manner in which questions arising under other laws shall be brought before courts and juries, yet they, as much as those others, are part of the public law. They bear the same relation to their subject matter, the actions and defences, the remedies and protection that the law affords, that the latter do to those ultimate interests they are intended to subserve, and it is equally important that they should be fixed and definite.

Applying these considerations to the present case : upon the commencement of this suit certain rules of pleading obtained, and it must be held that certain rights thereunder then arose as well to the defendant as to the plaintiff; as to them it then became necessary for the parties to conform their respective cases. If, as was held in *Roby* v. *West*, a statute passed pending a suit shall not deprive the defendant of a defence to which he would otherwise be entitled, by a parity of reasoning the plaintiff may not urge his claim, or reply to a defence, in a manner that was not open to him when he commenced his action. The operation of the statute would in this case be retrospective, because it would change the relation subsisting between the parties when the defendant was brought into court, and if it be not literally a rule for the decision of civil causes, it is entirely within the spirit of the objection.

More than one of these replications, standing alone, would be sufficient. The first is good, and tenders the issue correctly upon the execution of the bonds of submission; for though there may have been previous conversations and parol agreements, those are all merged in the bonds.

The third replication cannot be sustained. Where there are mutual remedies to compel the performance of the matters awarded, performance need not be pleaded. *Gascoyne* v. *Edwards*, 1 Y. & J. 19 ; *Jessamin* v. *Haverhill and Franconia Iron Man'y*, 1 N. H. Rep. 68.

The fourth replication is also bad. There is no allega-

tion of any fraud, corruption, misbehavior or even mistake in the referees. It is alleged, generally, that the award was based upon false and corrupt testimony, procured and laid before the arbitrators. To try the issue presented by the replication would be to inquire whether the referees arrived at just conclusions upon the testimony. The question whether any portion of it was false, is involved in those passed upon and settled by the tribunal chosen by the parties, and to determine it now, would be to try the case over again. This cannot be done. Nothing is better settled than that an award made upon a full hearing of the parties, where no mistake or misconduct is imputed to the referees, is forever conclusive upon the parties, and the matter cannot be reëxamined in any other tribunal. If there is an exception it must be on the ground of newly discovered evidence, which is not alleged in the present case, and the remedy, if any, must be by petition for a new trial. When the falsity of the evidence was known to the plaintiff is not alleged, or why it was not made known to the referees.

As the replications are pleaded, they are double, and must all fall together for that fault. The court can select no one of them. 1 Tidd (Am. Ed.) 612.