James and others *vs.* Stull and Andrews.

The statute of 1842, authorizing sales of mortgaged premises, under the power
contained in a mortgage, upon a notice of twelve weeks, is not unconstitu-
tional and void, so far as it operated upon mortgages in existence at the
time of its passage; notwithstanding that, previous to that statute, a notice
of twenty-four weeks was necessary.   Welles, P. J. dissented.

A power, in a mortgage, giving to the mortgagee the right, in case of default
in payment, to sell the premises, *according to law,* is to be construed to mean
that in case the mortgagor shall fail to pay, so as to make it necessary for
the mortgagee to resort to the remedy to enforce his rights, he shall proceed
according to the law in force at the time the default occurs.   *Per* Johnson, J.

State legislatures have the unquestionable right to pass laws which operate to
control and modify the express or implied provisions of contracts, so long as
they do not transcend the limits prescribed by the constitution of the Uni-
ted States.   It is only when they impair the obligation of contracts, that the
validity of their acts may be called in question.   *Per* Johnson, J.

The true question is, whether the obligation of the contract is impaired, either
by the law operating upon it directly, or by its operating upon the remedy
in such a manner as to essentially impair and take away the right of the
party to enforce the obligation.   It is not enough that the remedy is changed,
and rendered less speedy and convenient.   If there is still a substantial
remedy left, to enable the party to enforce his rights, that is sufficient. *Per*
Johnson, J.

In Equity.   The bill was filed by the plaintiffs, as subse-
quent mortgagees, to redeem a portion of certain premises cov-
ered by their mortgage, from a sale under a prior mortgage, and
to foreclose their mortgage.   The first mortgage was executed
upon the whole premises, Sept. 27, 1837, and was foreclosed by
advertisement published in a newspaper twelve weeks, and bid
in by the assignee of the mortgage, on the 5th of April, 1843.
The defendant Julius T. Andrews subsequently paid the pur-
chaser the amount of his bid, and took a conveyance of the prem-
ises from him.

The plaintiffs' mortgage was executed on the 25th of October,
1841, upon a part of the premises, by the defendant Stull, who
was then owner, subject to the first mortgage.   The plaintiffs
alledged that they were ignorant of the foreclosure and sale un-

James *v.* Stull.

der the first mortgage, and claimed that the sale was no bar to their right to redeem; and that the sale was void by reason of the notice having been published only twelve weeks.

*S. Mathews*, for the plaintiffs.

*C. Tucker* and *H. Gay*, for the defendants.

JOHNSON, J.    If the sale of the mortgaged premises, in pursuance of the power of sale in the mortgage, was valid, under the twelve weeks' notice, the complainants are barred of their equity of redemption.    By the revised statutes, prior to the act of 1842, the right of every "mortgagee of the same premises whose title accrued prior to such sale," was reserved from the operation of the sale.    But by the act of 1842, every person claiming by such a title is barred by a sale pursuant to that act, to a purchaser in good faith.    The right of a mortgagee is not a title, but that term is used both in the revised statutes and in the act of 1842, to designate the claim or interest which the mortgagee has in the mortgaged premises.    But it is insisted on the part of the complainants, that the sale is void because the notice was only published twelve weeks, and that the statute authorizing sales of mortgaged premises under the power in the mortgage, upon such a notice, so far as it operates upon mortgages in existence at the time of its passage, is unconstitutional and void.    The argument is that the power of sale in the mortgage is part of the contract, and that the terms of the power giving the right to sell according to law must be construed to mean the law as it existed at the time the mortgage was executed, which required a notice of twenty-four weeks.    It seems to me, however, that a much more reasonable and salutary interpretation of this language would be, that the parties intended by it that in case the mortgagor should fail to perform his obligation to make payment, so as to render it necessary for the mortgagee to resort to the remedy to enforce his rights, he should proceed according to the law in force at the time such resort became necessary.    But if we concede that the publication of the notice for twenty-four

weeks before sale was what the parties intended, and was in short a part of the contract, it would not certainly follow that the act in question is unconstitutional.

State legislatures have the unquestionable right to pass laws which operate to control and modify the express or implied provisions of contracts, so long as they do not transcend the limits prescribed by the constitution of the United States. It is only when they impair the obligation of contracts, that the validity of their acts may be called in question. Mr. Justice Baldwin, in delivering the opinion of the court in *McCracken* v. *Haywood*, (2 *Howard*, 608,) says that it is not to be understood that in the decision in *Bronson* v. *Kinzie*, (1 *Howard*, 311,) or in any former decision of that court, they had decided that all state legislation on existing contracts was repugnant to the constitution. And in that case it is expressly admitted that the power of state legislatures to pass recording acts, the effect of which may be to postpone the elder grantee to the younger, and to render the prior grant fraudulent and void as against a subsequent purchaser in good faith, and also acts of limitation, whether the acts are before or after the date of the deed or contract upon which they are to operate, is undoubted, and that their validity can not be questioned.

Chief Justice Taney, in *Bronson* v. *Kinzie*, says in regard to that case, that "if the laws of the state had done nothing more than change the remedy upon contracts of this description they would be liable to no constitutional objection. For undoubtedly a state may regulate at pleasure the modes of proceeding, in its courts, in relation to past contracts as well as future. It may, for example, shorten the period of time within which claims shall be barred by the statute of limitations." And he proceeds to show that the legislature may in its discretion exempt property from execution, and that this power must necessarily reside in every state, to enable it to secure its citizens from unjust litigation, and protect them in those pursuits which are necessary to the existence and well being of every community. "Whatever belongs to the remedy merely, may be altered according to the will of the state, provided the alteration does not impair the

obligation of the contract. But if that effect is produced, it is immaterial whether it is done by acting on the remedy or directly on the contract itself."

The true question undoubtedly is, whether the obligation of the contract is impaired either by the law operating upon it directly, or by its operating upon the remedy in such a manner as to essentially impair and take away the right of the party to enforce the obligation. It is not enough that the remedy is changed, and rendered less speedy and convenient. If there is still a substantial remedy left, to enable the party to enforce his rights, that is sufficient. The obligation of a contract consists in its binding force upon the party making it. The remedy is the power and the means given, either in the contract itself or by the law of the land, to the other party to enforce the fulfillment of the obligation when it is broken. The legislature can not deprive a party of this right, or of the means to enforce it, but it may undoubtedly change time, and mode, and process, and forum, at its pleasure, so that the binding obligation, and the right to enforce it, remain essentially unimpaired, and some adequate means are still secured. It is said in *Butler* v. *Palmer*, (1 *Hill*, 329,) "the authorities are abundant, both in the U. States courts and our own, that a statute impairing the remedy is constitutional, especially when it operates merely by way of limitation in point of time." That was a case where an existing right of redemption for one year was reduced to nine months by the act of the legislature, and it was held to be constitutional. It is supposed by the complainants' counsel that the assignee of the mortgage, in this case, having derived his power to sell in this manner from the power in the mortgage, solely, and that being a material part of the contract, the case is somewhat different from what it would be were the power to sell given by law instead of the contract. But I think this can make no difference, where nothing is stipulated for beyond the right the law confers. In *McCracken* v. *Hayward*, it is said that "the express power which a mortgagor confers on the mortgagee to sell as his agent is not more potent than that which the law delegates to the marshal to sell and convey the property levied on under an execution."

James *v.* Stull.

No one, I apprehend, doubts the right of the legislature to pass laws prescribing a longer or shorter time to the sheriff to advertise, before selling upon execution. Here the power expressly authorizes the party to proceed and sell according to law; which I take to mean the law in force when a sale should become necessary. But whether this be so or not, a law prescribing a shorter time for advertising before sale than then existed would not be repugnant to the constitution. It would impair neither the obligation of the contract, its binding force upon the party making it, nor the remedy of the other party. The obligation would still remain in full force, and the remedy, instead of being impaired, is rendered more speedy and advantageous. There can be no pretext for saying that the obligation of the contract is in any degree impaired by the act in question. This change in the time of advertising before sale upon a mortgage, is but one of several which from time to time have been made by the legislature, and the right has never before been questioned. Thousands of titles have passed under each of these acts, operating upon mortgages existing at the time of their passage respectively, which to disturb and render insecure, now, would be an intolerable evil. To hold this act unconstitutional would be to deny to the legislature, virtually, all power to legislate in regard to the practice of courts and proceedings on the part of creditors, to collect debts;—a power which must always exist and be frequently called into exercise in every commercial and advancing community, to meet peculiar exigencies, and keep the organization of courts and their proceedings in harmony with the demands of business and the substantial progress of society.

The complainants' bill must be dismissed with costs.

SELDEN, J. concurred.

WELLES, J. dissented.

                              Bill dismissed.