Mar. 21, 1876. }      SIMPSON *v.* CITY SAVINGS BANK.

The tenth and eleventh sections of an act passed at the June session of the legislature, 1874 (entitled "An act for the further protection of savings banks and savings bank depositors"), authorizing the reduction of the deposit accounts of insolvent savings banks so as to divide the losses equitably amongst the depositors, *held* to be constitutional.

A law which retroacts upon a past transaction, but affects the remedy only, and does not affect it injuriously, oppressively, or unjustly, is not a retrospective law within the meaning of article 23 of the New Hampshire bill of rights.

The tenth and eleventh sections of the law of 1874 are not inoperative, because, when enacted, there was a United States bankrupt law in force.

The general rule is, that, as soon as congress has exercised its power of making a general bankrupt law, and it has gone into operation, the state insolvent laws are suspended; but, where the bankrupt act expressly excepts a class of cases out of its operation, it will be presumed that congress did not intend to interfere in such specified class with the laws of the several states.

FROM HILLSBOROUGH CIRCUIT COURT.

### DECLARATION.

In a plea of the case, for that whereas, in consideration that the plaintiff, at said Nashua, to wit, at said Amherst, at and on divers days and times between June 1, A. D. 1868, and the second day of October, A. D. 1874, had deposited divers sums of money, to wit, nineteen hundred and sixty-six dollars and forty-seven cents, in said City Savings Bank, upon the terms, regulations, stipulations, and conditions named and set forth in the rules, regulations, and by-laws of said bank, the defendants then and there stipulated, agreed, and promised the plaintiff to allow and pay all such deposits, as well as such interest,

dividends, or accumulations as might arise, accrue, or become payable on such deposits, pursuant to such rules, regulations, and by-laws of said bank ; and the plaintiff avers that the defendants further promised and agreed that the plaintiff might and could withdraw such said deposits, accumulations, interest, and dividends, by giving ninety days' written notice upon all sums exceeding one thousand dollars, as by said terms, stipulations, and regulations of said bank, published and made known to the plaintiff by the defendants at the time of said deposits, will appear ; and whereas, on the second day of October, A. D. 1874, the plaintiff gave the defendants written notice, and, among other things, the plaintiff requested of the defendants to withdraw the funds of the plaintiff so deposited, and then and there requested payment of the defendants of the same, although the ninety days' written notice, so required by the regulations of said bank of the plaintiff to be given, have long since expired, the defendants have not paid the same, but neglect it.

Also, in a plea of the case, for that the said defendants, at said Amherst, on the day of the purchase of this writ, being indebted to the plaintiff in the sum of three thousand dollars for money by the plaintiff before that time lent and advanced to said defendants at their request, and for other money before that time paid, laid out, and expended for the defendants at their request ; and for other money before that time had and received by the defendants to the plaintiff's use ; and for interest on certain sums of money before that time due and owing from the defendants to the plaintiff,—in consideration thereof then and there promised the plaintiff to pay him the same sum on demand, yet, though often requested, the said defendants have never paid the same, but neglect and refuse so to do, to the damage of the said plaintiff (as he says) the sum of three thousand dollars.

### PLEA.

The said defendants come and defend, etc., when, etc., and confess the plaintiff's said action, and that the plaintiff is entitled to recover damages therein to the amount of six hundred and fifty-five dollars and twenty-two cents, and no more.

And as to the residue of the plaintiff's claim, the said defendants come and defend, etc., when, etc., and say the plaintiff, his action aforesaid for said residue thereof against them ought not to have and maintain, because they say that, since the commencement of his aforesaid action by said plaintiff, and since the said causes of action mentioned in said declaration accrued, to wit, on the ninth day of April, A. D. 1875, at said Nashua, to wit, at said Amherst, upon the representation of the bank commissioners for the state of New Hampshire to the Hon. ISAAC W. SMITH, a justice of the superior court of judicature of said state, the assets of said City Savings Bank had by depreciation been and then were reduced in value below ninety per cent. of the total amount of deposits then in said bank, so that the depositors therein must be subjected to loss, and, upon the petition of said

bank commissioners, that said justice, in connection with said commissioners, should reduce the deposit account of each depositor so as to divide such loss equitably amongst the said depositors, agreeably to sections 10th and 11th of chapter 71 of the Laws of the State of New Hampshire, passed at the June session of the legislature, A. D. 1874, entitled "An act for the further protection of savings banks and savings bank depositors," the said justice, in connection with said commissioners, did, upon examination into the condition of said bank, find the total amount of deposits in said bank to be $372,430.28, and that the assets of said savings bank had become and were reduced in value below the amount of said deposits in the sum of $124,143.43, such reduction being equal to 33⅓ cents of each and every dollar of said deposits; and did thereupon, of their own motion, order and decree that the deposit account of each depositor in said savings bank be reduced to the amount of 66⅔ per cent. of the amount of each and every deposit therein, so as to divide the loss occasioned by the reduction of said assets equitably amongst the depositors, and that the said plaintiff's deposit account, on the said ninth day of April, A. D. 1875, amounted in all to $982.83, and no more, and that, by said order and decree, it was reduced to $655.22,—and this they are ready to verify.

Wherefore they pray judgment, if the plaintiff's action aforesaid, as to the said residue of the said plaintiff's claim, ought to have or maintain against the said defendants, and for their costs.

### DEMURRER.

And the plaintiff comes and defends, etc., when., etc., and says that the plea of the defendants in said case pleaded is insufficient in law, and that the plaintiff is not bound by law to answer the same.

The questions of law arising in the foregoing cause were transferred to this court for determination upon the pleadings by FOSTER, C. J.

*A. W. Sawyer*, for the plaintiff.

*C. H. Burns*, for the defendants.

RAND, J., C. C. This case raises the question whether or not the tenth and eleventh sections of the act passed at the June session of the legislature, 1874, entitled "An act for the further protection of savings banks and savings bank depositors," are constitutional. The sections in question are as follows: Sec. 10, chap. 71. "Whenever the assets of any savings bank shall be reduced in value below the total amount of deposits, any judge of the supreme or superior court, in connection with the bank commissioners, shall, on the written petition of a majority of the trustees or directors, reduce the deposit account of such depositor so as to divide such loss equitably amongst the depositors; provided, however, if the bank shall afterwards realize from the assets a greater amount than that fixed upon by the judge and bank commissioners, the amount so realized shall be equitably divided

and credited to the account of the depositors which had been thus reduced, but to the extent only of such reduction." Sec. 11. " Whenever it appears to the bank commissioners that the assets of any savings bank are reduced below ninety per cent. of the deposits, it shall be the duty of said commissioners, in connection with a judge of the supreme or superior court, of their own motion, to proceed as provided in section ten."

It is important, in the first place, to see how the law stood before the act of 1874 was passed.

According to ch. 152 of the Gen. Stats., if it is judged by the bank commissioners to be necessary for the public safety that any bank should not continue to transact business, they shall represent the facts by petition to some justice of the supreme court. Such justice shall issue an injunction prohibiting, so far as may be thought necessary, the transaction of any business by said bank, and the commissioners shall cause the same to be duly served. Such injunction may be modified by said justice ; and the court, upon petition and notice to the bank commissioners, may dissolve, modify, continue, or extend the same, as equity may require. The bank commissioners may apply to the court, or a justice thereof, to appoint an assignee of the property and effects of such bank, and such appointment may be made by the court.

Such assignee shall take possession of all the estate, property, rights, and credits of the bank, and may do any act necessary to convert such assets into money. Upon application the court may issue an injunction restraining all proceedings at law by any creditor against such bank, and may order notice to be published requiring all creditors to present and prove their claims against such bank, and in default to be precluded from all benefit of the assets of such bank.

The proceeds of the property shall be holden (1) to pay the expenses of the assignment; (2) to pay all bills issued by the bank pro rata ; (3) to pay in equal proportions all debts, claims, and obligations owing by such bank ; (4) the remainder to be divided among the stockholders according to their interests.

The plaintiff contends that the act of 1874 is void, because (1) it impairs the obligations of contracts, and is in conflict with art. 1, sec. 10, of the United States constitution ; (2) because it is retrospective in its operation, and is therefore repugnant to the 23d article of the New Hampshire bill of rights ; (3) because there was a general United States bankrupt law in force when the law of 1874 was passed.

It is very well settled doctrine that courts will not declare laws unconstitutional unless they are clearly so. 1 Cow. 550 ; 19 John. 58 ; 2 Pa. St. 184; 12 Wheat. 270 ; 6 Cranch 87 ; 2 Pet. 522; 3 Dall. 399; 4 Dall. 14; 1 Cranch 137 ; 1 N. H. 114; 39 N. H. 304; 16 Pick. 95.

I. Does the law of 1874 impair the obligation of the contract which the plaintiff made with the bank, and is it therefore repugnant to the constitution of the United States? What was the contract ?

The second section of the act of 1863, incorporating the bank, pro-

vides that "said corporation shall be located in the city of Nashua; shall be capable of receiving, from any person or persons disposed to enjoy the advantages of said savings bank, any deposit or deposits of money, and to use, manage, and improve the same for the benefit and best advantage of the person or persons by and for whom the same shall be deposited respectively; and the net income and profits of all deposits of money received by said corporation shall be paid out and distributed in just proportions among the several persons by and for whom the said deposits have been made." When this provision of the bank's charter is compared with the law as laid down in the General Statutes, it seems to me to be too clear for argument, that, by the contract made with the bank, the plaintiff was to receive his just proportion of the profits of the bank, and bear his just proportion of the losses. The pleadings admit that the assets of the bank are not sufficient to pay the depositors in full. The contract in this case is what the law, as it existed at the time the contract was made, implies from the acts of the parties, and its obligation consists in its binding force upon the parties. How can it be said that the law implies that other depositors, standing in precisely the same relations to the bank as the plaintiff, must bear more than their share of the losses? The law of 1874 provides a new way of getting at the just share of such depositor in the losses of the bank. It would seem to be less cumbersome than the old law. It is purely a law affecting the remedy; and it is not easy to see how the depositors of the bank are injured by it. There is great weight of authority to the point that a legislature may "vary the nature and extent of the remedy, so always that some substantial remedy be in fact left."

*Morse* v. *Goold*, 1 Kernan 281; *Stocking* v. *Hunt*, 3 Denio 274; *Van Rensselaer* v. *Snyder*, 3 Kernan 299; *Ogden* v. *Saunders*, 12 Wheat. 213; *Mason* v. *Haile*, 12 Wheat. 370; *Bumgardner* v. *Circuit Court*, 4 Mo. 50; *Tarpley* v. *Homer*, 17 Miss. 310; *Quackenbush* v. *Danks*, 1 Denio 128; *Bronson* v. *Newberry*, 2 Doug. (Mich.) 38; *Rockwell* v. *Hubbell's Adm'rs*, 2 Doug. (Mich.) 197; *Sprecker* v. *Wakeley*, 11 Wis. 432; *Smith* v. *Packard*, 12 Wis. 371; *Holloway* v. *Sherman*, 12 Iowa 282; *Penrose* v. *Erie Canal Co.*, 56 Pa. St. 46; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *James* v. *Stull*, 9 Barb. 482; *Bruce* v. *Schuyler*, 4 Gilman 221, 227; *Howard* v. *Kentucky & Louisville M. Ins. Co.*, 13 B. Mon. 285; *Bigelow* v. *Pritchard*, 21 Pick. 169; *Evans* v. *Montgomery*, 4 Watts & S. 218; *Bronson* v. *Kinzie*, 1 How. 311.

It will be noticed that section ten of the act of 1874 does not relieve the bank from the claim of the depositor upon payment of his reduced account.

II. Are the tenth and eleventh sections of the act of 1874 repugnant to the twenty-third article of the New Hampshire bill of rights?

That article is as follows: "Retrospective laws are highly injurious, oppressive, and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offences."

The last case in our reports, which interprets this article of the con-

stitution, is *Kent* v. *Gray*, 53 N. H. 576. The doctrine of that case is, that " retrospective laws are unconstitutional and void, because they are injurious, oppressive, and unjust." It is also said, in the opinion delivered, that " any generalization founded on the distinction between right and remedy is attended with some danger, because of the difficulty of drawing that distinction so accurately as not to impair the force of the constitutional prohibition. Undoubtedly, a remedy may be changed in some sense, and to some extent, without affecting a right,—that is, there may be a change in the remedy that is not injurious, oppressive, and unjust; but it is equally clear that a remedy may be so changed as to affect a right injuriously, oppressively, and unjustly, within the meaning of the prohibition. A statute is not necessarily just and valid because it affects the remedy. The question is not whether it affects the remedy, but whether it affects the remedy in a certain sense, and the remedy only." There was no dissenting opinion in *Kent* v. *Gray*, and the doctrine of that case must be regarded as the deliberate opinion of all the judges who then constituted the court. A law is not, then, necessarily within the prohibition of the twenty-third article of the bill of rights, because it looks back upon past transactions; it is not necessarily outside of the prohibition, because it affects the remedy; but if it affects the remedy only, and the court cannot see that it affects it injuriously, oppressively, or unjustly, the law should be regarded as constitutional and valid.

*Rich* v. *Flanders*, 39 N. H. 304, was a very carefully considered case. In that case the court was divided in opinion. Two very able dissenting opinions were delivered by BELL, C. J., and BELLOWS, J. But Judge BELLOWS says, at the close of his opinion, that he did not consider the question of the power to change the remedies for existing causes of action when no suit had been brought, because his views were prepared for a suit which was pending at the passage of the law. And BELL, C. J., says,—" The distinction relied on in *Willard* v. *Harvey*, between a retrospective law affecting the remedy alone, and one which affects the decision of the cause, still appears to us to be sound: it is supported by the language of the constitution, and by the numerous decisions referred to." The views of the majority of the court were given by SARGENT, J., p. 319: " A retrospective law literally means, a law which looks backward, or upon things that are past; or, if it be taken to be the same as retroactive, it means, to act on things that are past. If it were to be understood in its literal meaning, without regard to the legal intent, then all laws having an effect upon past transactions, or laws by which the slightest modification should be made of the remedy for the recovery of rights accrued or the redress of wrongs done, are prohibited equally with those which divest rights, or impair the obligation of contracts. But we have seen that it has not received any such literal interpretation in this state, but that it has uniformly been held that statutes affecting the remedy, though in fact retroactive, are not considered retrospective in the legal sense of that word."

In *Kennett's Petition*, 24 N. H. 139, it was held that the act of 1850, relating to road commissioners, was void as to that petition, which was pending before the passage of the act, because it affected the *decision of an existing cause of action.*

In *Willard* v. *Harvey*, 24 N. H. 344, the doctrine in regard to retrospective legislation is stated as follows : "The broadest construction of legislative rules, which forbid retrospective legislation, would require that all statutes, affecting in any way a civil cause, must be so entirely prospective, that no new rule could be applied in the decision of a cause which did not exist when the right of action accrued. But a construction so broad as this could not be reasonably held, since the effect would be that no change could be made in the courts or course of justice which would affect the actions or causes of action then existing.

"The courts, therefore, have everywhere recognized a distinction between statutes affecting rights, and those affecting remedies only."

*Pickering* v. *Pickering*, 19 N. H. 389, is a case where the objectionable law was passed after the commencement of the suit. The court there say,—" Upon the commencement of this suit, certain rules of pleading obtained ; and it must be held that certain rights thereunder then arose as well to the defendant as to the plaintiff ;—as to them, it then became necessary for the parties to conform their respective cases."

In *Dickinson* v. *Lovell*, 36 N. H. 364, it was held that the act of 1855 did not take away the right of review in actions pending when the statute went into effect. The discussion in the case related mainly to sec. 26 of ch. 1 of the Revised Statutes. The court say,—" Suppose the legislature to have had the constitutional power to take away this right: did they intend that the act should have that effect ?

" In cases where the legislature have unquestionable power under the constitution to take away or substantially modify the remedy in a pending suit, it is generally impolitic and unjust to exercise the power."

It seems to be conceded here by Judge PERLEY, who delivered the opinion, that there are cases in which the legislature have the power to take away or substantially modify the remedy.

*Colony* v. *Dublin*, 32 N. H. 432, is a case similar to *Dickinson* v. *Lovell*, and the opinion was delivered by the same judge. The discussion turned not so much upon the twenty-third article of the bill of rights, as upon the 26th section of chap. 1 of the Revised Statutes. Judge PERLEY says,—" We are not inclined to deny that the legislature have power to change the mode of proceeding on a pending petition for a highway by a general law applicable to the subject, though the change might be such as in a particular instance would defeat the object of the petition." And again : " In cases where it would be within the acknowledged scope of legislative power to change the law so as to defeat a legal proceeding already commenced, it would in most instances be unjust to exercise the power." It was decided that the general rule of construction in the Revised Statutes must be applied to

the act of 1855, which provided that no highway should thereafter be laid out except on the unanimous report of the road commissioners, and, therefore, that the act must not be allowed to affect a pending proceeding.

*Dunbarton* v. *Franklin*, 19 N. H. 257, raises no question as to the power of the legislature to pass remedial statutes which retroact upon past transactions. It decides that sec. 11 of chap. 149 of the Revised Statutes, which declares under what circumstances persons cohabiting together shall be deemed to have been legally married, must not be permitted to operate retrospectively.

*Roby* v. *West*, 4 N. H. 285, was trover for lottery tickets. In June, 1807, an act was passed for the suppression of lotteries. In July, 1827, this act was repealed. It was held that the repealing act having been passed since the commencement of the action, to construe it to take away any ground of defence would give it the operation of a retrospective law for the decision of a civil cause.

In *Dow* v. *Norris* it is held, that, where a statute gives a penalty incurred under it to an individual, the right of the individual cannot be taken away by a repeal of the statute. In this case it is also held, " That a law operating retrospectively upon an existing cause of action, when no suit is pending, is as much to be deemed a retrospective law for the decision of a cause, and as much within the prohibition of this clause in the constitution, as a law establishing a new rule of decision for an existing action." It will be noticed that the language is, " operating retrospectively upon an *existing cause of action.*" I think there can be no doubt about the soundness of the general doctrine here laid down ; and it seems to me to be equally clear, from the authorities in this state, that, where the law is one affecting the remedy alone, the question whether or not a suit has been instituted may touch the very pith and marrow of the controversy ; for upon the answer to that may depend the answer to the further question, whether or not the law operates injuriously, oppressively, and unjustly. The bringing of a suit may introduce into the controversy questions in regard to vested rights, which would not otherwise arise.

In *Clark* v. *Clark*, 10 N. H. 380, it is held that a statute which attempts to confer authority upon the court to grant a divorce for matters already past, and which, at the time they occurred, furnished no ground for a dissolution of the marriage, is a retrospective law for the decision of a civil cause.

But, in the opinion, PARKER, C. J., says,—" Of course it is not intended to deny the right of the legislature to vary the mode of enforcing a remedy, or to provide for the more effectual security of existing rights. * * * All retrospective laws are not within the prohibition, notwithstanding the general terms of the first part of the article. * * * That a retrospective law operates oppressively and unjustly, however, tends to show that it is within the condemnation of the constitution." And he quotes from *Woart* v. *Winnick*, 3 N. H. 481. In that case it was held that an act of the legislature, repealing a statute

of limitations, is, with respect to all actions pending at the time of the repeal, and which are barred by the statute, a retrospective law repugnant to the constitution. And the doctrine is stated generally in the following terms: "That it [the clause in the constitution] was intended to prohibit the making of any law prescribing new rules for the decision of existing causes, *so as to change the ground of the action, or the nature of the defence.*"

In *Society* v. *Wheeler,* 2 Gall. 105, Judge STORY holds the act of 1805 unconstitutional, if applied to a possession existing and improvements made prior to its passage. The act provided that when there had been peaceable possession and actual improvement of land, by virtue of a supposed legal title under a *bona fide* purchase, for more than six years before suit brought for the recovery of the land, the tenant should be entitled to the value of his improvements. The decision was, that the statute could apply only to cases where there had been possession for six years after the passage of the statute;—and Judge STORY says,—" Upon principle, every statute which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, must be deemed retrospective." This language must, of course, be understood with reference to the facts in the mind of the court. Giving it the broadest possible interpretation, it might perhaps include a law affecting the remedy alone, and not operating injuriously, oppressively, or unjustly. But I think it should not be so interpreted.

In *Merrill* v. *Sherburne,* 1 N. H. 199, it is held that an act of the legislature, awarding a new trial in an action which has been decided in a court of law, is an exercise of judicial power, and in its operation retrospective. There can be no doubt about the soundness of that decision, but its bearing upon the case before the court is somewhat remote.

The foregoing are the New Hampshire cases relied on by the plaintiff. A review of them seems to lead to this question: Do the 10th and 11th sections of the act of 1874 operate injuriously, oppressively, or unjustly upon the plaintiff? The law was passed before his suit was instituted, but after his deposits were made. He complains that his attachment is defeated as to one third of his claim; but, under the law as it stood when the deposits were made, his whole suit might be defeated, and his entire claim remain unpaid until a receiver appointed by the court should pay him a dividend, if a dividend should be declared. Under the new law, he gets two thirds of his claim without delay, and holds unimpaired the right to claim his *pro rata* share of the balance, if the bank realize from the assets a greater amount than that fixed upon by the judge and commissioners. If there is any injury, oppression, or injustice here, I am not able to see it.

In the plaintiff's brief, it is suggested that "This law of 1874 touches the 'heart blood' of this plaintiff, because, if there had been an injunction, the defendants would have been obliged to settle the

plaintiff's costs as well as his debt." It would seem to be clear enough, that, if the plaintiff had accepted the amount confessed, he would have taken judgment for his costs up to the time of the confession. But now, if he suffer in the matter of costs, his tribulation will be caused not so much by the law of 1874, as by his own persistent disregard of the law.

III. Is the law of 1874 inoperative, because when enacted there was a United States bankrupt law in force ?

" Whenever a corporation, created by the laws of any state, whose business is carried on wholly within the state creating the same, and also any insurance company so created, whether all its business shall be carried on in such state or not, has had proceedings duly commenced against such corporation or company before the courts of such state, for the purpose of winding up the affairs of such corporation or company, and dividing its assets ratably among its creditors, and lawfully among those entitled thereto, prior to proceedings having been commenced against such corporation or company under the bankrupt laws of the United States, any order made or that shall be made by such court, agreeably to the state law, for the ratable distribution or payment of any dividend of assets to the creditors of such corporation or company while such state court shall remain actually or constructively in possession or control of the assets of such corporation or company, shall be deemed valid, notwithstanding proceedings in bankruptcy may have been commenced and be pending against such corporation or company." Rev. Stats. U. S., tit. 61, ch. 6, sec. 5123, p. 995.

There is no doubt that the general rule is well settled, that, as soon as congress has exercised its power of making a general bankrupt law, and it has gone into operation, the state insolvent laws are suspended. *Chamberlin* v. *Perkins*, 51 N. H. 340, and cases there cited. But " where the bankrupt act expressly excepts a class of cases, it must have been the intention of congress not to interfere in such specified class with the laws of the several states." Bump on Bankruptcy 243.

I think the condition of the defendant bank is such as to place it among the class of cases excepted out of the operation of the bankrupt law. The demurrer must therefore be overruled.

CUSHING, C. J. The question in this case arises upon a demurrer to the plea. The plea confesses the plaintiff's action to the amount of $655.22, and pleads in bar to the residue of the plaintiff's claim that proceedings had been had under the law of June, 1874, entitled "An act for the further protection of savings banks and savings bank depositors ;" and that, on April 9, A. D. 1875, the bank commissioners, in conjunction with a justice of the superior court, had examined into the affairs of the bank, and found that one third of its deposits had been lost, and that the plaintiff's just proportion of the remaining two thirds amounted to the above mentioned sum of $655.22, and no more. The plea amounts, I think, to a sufficient allegation that the whole present value of the plaintiff's share of the deposits in the bank amounts. to that sum, and no more.

This brings us directly to the question whether a depositor in a savings bank is entitled, by getting ahead in what used to be called the race of diligence, to pay himself his whole demand out of the funds of the bank at the expense of his co-depositors. The question has only to be asked, to be answered in the negative.

In the case of *Coite* v. *Soc. for Savings*, 32 Conn. 173, the court say that savings societies " are in fact large incorporated agencies for receiving and loaning money on account of their owners. They have no stock and no capital. * * * They are merely places of deposit, where money can be left to remain, or be taken out, at the pleasure of the owner."

In the case of *Bunnell* v. *The Collinsville Saving Soc.*, 38 Conn. 203, it appeared that the bank, having met with losses, and the directors having ascertained that the bank had suffered losses amounting to a sum equal to twenty-four per cent. of the deposits, voted that " the twenty-four per cent. of his balance, on January, 1868, be charged to each depositor to cover the loss sustained by the bank, it being understood that a dividend is to be declared in the same way to the depositors when all accounts are settled." The vote of the directors was substantially like the statute of New Hampshire, reducing the deposit accounts to the present value of the funds of the bank, and providing for a further dividend in case there should eventually be anything more realized.

The action was brought after the plaintiff had received his seventy-six per cent., for the purpose of recovering the remaining twenty-four per cent. It was held that he could not recover. PARK, J., *arguendo*, says,—" Had this institution wound up its affairs in consequence of this loss, the plaintiff would not have received any portion of the sum he now seeks to recover. * * * He knew, when he deposited his money, that he was placing it at hazard. He put it into the hands of the defendant to be used by it substantially as his agent for his benefit, and in the use so much of it as has been lost. What ground has he to complain ?

" The assets this institution now has belong substantially to the present depositors. How can he obtain his loss ? Shall he be paid out of their money ? They have an equal right to be paid out of his. Substantially, he has lost the sum he now seeks to recover by his own act, through the instrumentality of his agent, and he has no cause to complain."

In the present case, it stands admitted on the pleadings that the defendants have confessed the plaintiff's action for the whole amount of his share of the present value of the assets of the bank. There can be no hardship in holding him to this, because, by the provisions of the statute, if anything more should be realized out of the assets of the bank, he is to have his share.

This view of the case entirely avoids all question as to the constitutionality of the statute under consideration, because there never was any contract on the part of this bank to pay any more than the plain-

tiff's share of what should be found to be the actual value of the deposits.

The charter of the bank, as well as the general law of New Hampshire, provides that the legislature may at any time amend, alter, or repeal the charter, but always so as not to affect any existing rights or liabilities. The charter of this bank must be taken, therefore, to be now amended by the provisions of the act.

It should be remembered that this case comes up on a demurrer to a plea by which, as I think, it is substantially admitted that the plaintiff's share of the assets of the bank amounts to no more than the sum confessed, so that the question is distinctly raised whether the plaintiff can recover more than his share of the assets of the bank.

From the charter of the bank, taken in connection with the general law—Gen. Stats., ch. 152, and Comp. Stats., ch. 148—I infer that the depositors are entitled to their shares of the profits and bound to bear their shares of the losses according to the amount of their deposits, and each depositor is entitled to his share of the assets of the bank. I do not think there is any contract, express or implied, on the part of the bank, to pay any more.

With this view of the matter, I confess I do not see any room for the intervention of a bankrupt law at all, if there are no claims against the bank excepting those of the depositors. How can it be said, in any just sense, that the bank, under such circumstances, is owing debts which it cannot pay ? Nor can I see of what use a certificate of discharge would be. The depositors are entitled to the aid of the statute, and, in the absence of statute provision, to the aid of chancery, to effect a fair distribution of the assets.

If there were anything conclusive as to the final result in the action under the statute of 1874, I should be extremely doubtful of its constitutionality, in so far as it attempted to provide for a permanent adjudication without notice to all the parties who are entitled to be heard.

The statute, however, does not, as I understand it, propose any final result, or deprive the depositors of the right to a full hearing before the proper tribunal for the purpose of determining the exact value of each depositor's share. There is nothing in the act under consideration, which I can see, which purports to interfere with or prevent the statutory provisions for winding up such banks whenever the bank commissioners think it expedient. The statute furnishes a very convenient mode by which the bank can be put in condition to go on if the depositors acquiesce; but it does not, that I can see, prevent the plaintiff, or any other depositor, from applying to the commissioners, and putting in motion the statutory provisions for winding up the bank and dividing the deposits.

Neither does it, in any way that I can see, interfere with the operation of the bankrupt law, if the bank should be so situated as to come within its provisions,—i. e., if it should be found to be owing debts which it could not pay,—to which the bankrupt law could apply. I do not now see how the claims of the depositors to their shares of the

capital stock or deposits can be considered such a debt; but that need not be determined here.

LADD, J.  I am of the same opinion.  The object of the statute of 1874 clearly was, to provide a simple and inexpensive mode by which the rights of the depositors *inter sese*, as they exist at common law under the charter of the bank, as well as the rights and obligations of the bank, may be protected and enforced.  I cannot see that it does anything more than a court of equity would be bound to do, upon proper application, without any statute,—namely, secure a *pro rata* division, among its equitable owners, of a common fund, which has been placed in the hands of a common agent, to be used by such agent for the common purpose of making gain and profit for the principals.  It seems to me that this view, which has been fully presented by the chief-justice as well as by my brother RAND, disposes of the whole case, and that we need go no further.

*Demurrer overruled.*