## KENT *v.* GRAY.

A statute, allowing writs to be amended by striking out the names of some of the plaintiffs, cannot be constitutionally applied to a penal action pending at the time of its passage, where the penalty "may be recovered * * by any person who will sue for the same."

DEBT, by "Richard P. Kent, George A. Cossitt, and George O. Rogers, the health officers of the town of Lancaster, who sue this action as well for the county of Coös as for themselves," against Hosea Gray, for penalties under Gen. Stats., ch. 101, sec. 8. At the July term, 1872, it was decided, on demurrer, that sec. 1 of ch. 248, Gen. Stats., authorized the action to be brought by one person only, and that it could not be maintained by three plaintiffs. The action was brought before 1872. Chapter 39 of the Laws of 1872 provides,—"In all civil proceedings, when two or more are joined as plaintiffs, the writ or other process may be amended by striking out the name of any plaintiff before the evidence is closed, or the case is submitted;" and "this act shall take effect upon its passage and apply to existing suits." At the November term, 1872, the plaintiffs moved to amend the writ by striking out the names of two of the plaintiffs; and the motion was reserved.

*Ray & Drew*, and *Crawford*, for the plaintiffs.

*Burns & Heywood*, *Fletcher & Heywood*, and *G. A. Bingham*, for the defendant.

DOE, J. Can the act of 1872 be constitutionally applied to penal suits existing at the time of its passage?

In *Rich* v. *Flanders*, 39 N. H. 304, it was held by a majority of the court that the legislature could, by a general act, remove the common-law disability of parties to testify in pending as well as future suits. The objection to retrospective laws is declared, in article 23 of the BILL OF RIGHTS, to be, that they " are highly injurious, oppressive, and unjust." The objection is substantial, not formal,—reasonable, not technical; and the reason of the objection, like the reason of all law, is to be considered in interpretation and administration. The reason of the constitutional prohibition of retrospective legislation is, the material and substantial injury, oppression, and injustice caused by its practical operation.

Taking the prohibition in the reasonable and equitable sense, explicitly announced in the BILL OF RIGHTS as a prohibition of the injustice of retrospectively converting right into wrong or wrong into right, and applying it in that sense to the case of *Rich* v. *Flanders*, it might be argued that, in allowing both parties to testify, there was no such transmutation, but merely a grant of equal rights to both parties by an im-

partial enlargement of the bounds of competent evidence on each side of the issue, not changing the issue, or the right to be established, or the wrong to be redressed, or the form or substance of the remedy; that, giving both parties the additional means of showing the truth, and proving and disproving the right asserted or the wrong complained of, and demonstrating what was right and what was wrong, was neither an injury, nor oppression, nor injustice, in a moral or legal sense, and, therefore, not within the constitutional prohibition; that allowing the parties to testify did not alter the character or effect of competent evidence, but only increased its quantity; that neither party had a vested right in the exclusion of evidence and the suppression of the truth, on the trial of an unaltered issue, upon the determination of which depended the vindication of an unaltered right by an unaltered remedy, or the discharge of the defendant from an unaltered claim, on unaltered grounds, in an unaltered process; that there could be no right upon which the additional testimony of the parties would have an injurious, oppressive, or unjust effect, in the sense of the words as used in the BILL OF RIGHTS; that the objection to such an impartial increase of the bulk of competent evidence, leaving the general character and weight of evidence unchanged, stands upon two presumptions not recognized by law,—1. That the parties will testify falsely; 2. That the tribunal trying the facts will be incompetent to perform its duty,—or, that the more light a competent tribunal has, the more unable it will be to see the truth; that the constitutional prohibition is to be construed by the principles of natural justice on which it professes to rest, and which it professes to guarantee and enforce; that no principle of justice is violated by removing from both parties a disability to tell their own stories; that the act allowing parties to testify was an enabling and not a disabling act; that it merely enabled each party to put himself and the other party on the stand, and throw more light on their unaltered controversy; that it would be a very different thing if the legislature should undertake to give artificial weight to a certain class of evidence in a pending suit, as by declaring certain proof to be *prima facie* evidence (*Chappell* v. *Purday*, 12 M. & W. 303, 306, where Ld. ABINGER thought the legislature did not intend, by an *ex post facto* law, to give one party to a suit already commenced so great an advantage over his adversary); that it would also be a very different thing if the legislature should undertake, by a disabling act, to render a competent witness incompetent in a pending suit; that it might be injurious, oppressive, and unjust, by a retrospective statute, to deprive a party to a pending suit of the means of showing the truth; that to destroy the competency of a witness might unjustly defeat the party having the burden of proof, —might unjustly defeat either party,—by depriving him of evidence of the truth on which he relied and had a right to rely; that, although the court could decide the constitutional question only upon general principles of justice, and not by examining all the evidence in each case, and ascertaining whether the exclusion of a certain witness would unjustly affect the verdict and the right in controversy, it

could not be presumed that the exclusion would have no unjust effect; that, although the court could not decide the constitutional question by investigating the proceedings in each case, and ascertaining whether, as a matter of fact, either party had been properly induced to prosecute or defend the suit by his reliance upon the testimony of a particular witness, it could not be presumed that the prosecution or defence had not been properly caused by a reliance upon all the testimony that was competent when the suit was commenced; that it would apparently be unjust to deprive either party of evidence of the truth, by the competency of which he had been induced to incur expense in the prosecution or defence, although the removal of an unjust disability of a witness would not be unjust; that neither party can justly rely upon the inability of his adversary to prove, by his own testimony, the truth of a controverted fact; that the only escape from the conclusion reached in *Rich* v. *Flanders* is by way of the possibility of the tribunal being deceived by the testimony of the parties, and of injustice being done in consequence of the inability of the tribunal to discern the truth; and that such a possibility is no more ground for holding the application of the enabling act to pending suits to be unconstitutional, than it would be for holding every change of the tribunal inapplicable to pending suits, by reason of the possibility that the new tribunal might not ascertain the truth which, perhaps, the old tribunal would have ascertained.

An argument of that kind might be made, in support of the doctrine of *Rich* v. *Flanders*, on very narrow ground. We are not to be understood as saying that it is only on such a ground that the doctrine of that case can be supported; but it is suggested that, if such a ground can be maintained, it would be sufficient for that case.

In the present case, at the time of the passage of the act of 1872, there were three plaintiffs; and they, jointly constituting the party plaintiff, had no right of action against the defendant, and he was under no liability to them. This state of things the legislature undertook to change, by allowing two of the plaintiffs to withdraw,—a proceeding which, if successfully followed, would, so far as these parties are concerned, change no cause of action into a good cause of action, and operate as a substantial creation of a new suit that could be maintained, in place of an old one that could not. This is going far beyond impartially giving both parties additional means of proof. We see nothing in the doctrine of *Rich* v. *Flanders* that sustains legislation of this character.

There is much authority for holding, in general terms, that a right to have one's controversies determined by existing rules of evidence is not a vested right; that rules of evidence pertain to the remedies which the state provides for its citizens; that, like other rules affecting the remedy, they must at all times be subject to modification by the legislature; that changes affecting the remedy may lawfully be made applicable to existing causes of action; that the changes are not retrospective, because they are to be applied in future trials, and are not to

affect previous trials. Cooley Const. Lim. 367. But general statements of this kind are to be taken with the broad qualification that the changes must not infringe the general principles of justice. Retrospective laws are unconstitutional and void, because they are injurious, oppressive, and unjust. That is the plain and simple rule laid down in the bill of rights. And any generalization founded on the distinction between right and remedy, is attended with some danger, because of the difficulty of drawing that distinction so accurately as not to impair the force of the constitutional prohibition. Undoubtedly, a remedy may be changed, in some sense, and to some extent, without affecting a right,—that is, there may be a change in the remedy that is not injurious, oppressive, and unjust: but it is equally clear that a remedy may be so changed as to affect a right injuriously, oppressively, and unjustly, within the meaning of the prohibition.

A statute is not necessarily just and valid because it affects the remedy. The question is, not whether it affects the remedy, but whether it affects the remedy in a certain sense, and the remedy only. This point is forcibly illustrated in the dissenting opinion of BELL, C. J., in *Rich* v. *Flanders*, 39 N. H. 347, 348. If a statute, in terms made applicable to pending suits, should provide that no deed should be received in evidence unless the attesting witnesses were fifty years of age at the time of the trial, and if the retrospective character of such a statute were the only objection to its validity, it would not be made valid by the fact that it affected the remedy. It could not be applied to pending suits, or to deeds duly executed before its passage, because it would unjustly affect rights as well as remedies. Legal evidence of title could not be justly destroyed, however strongly the statute might profess to be exclusively aimed at the remedy. The principles of justice, declared by the prohibition of retrospective laws, are not evaded by words, names, and pretences. And when we have merely ascertained that a statute affects the remedy in some sense or other, we have made very little progress in the inquiry whether it affects a right, that is, whether it is unjust on general principles. If a certain change can be made in the remedy, it is because it can be justly made: if a change cannot be made in the right, it is because it cannot be justly made.

A statute abolishing the action of assumpsit, and substituting for it the action of debt, might be applied, without injustice, to existing causes of action not in suit; but it could not be constitutionally applied to oppress a plaintiff in a pending suit in assumpsit. Having incurred expense in bringing a proper suit, and pursuing a remedy provided by law, it would be unjust to turn him out of court, render a judgment against him for the defendant's costs, and leave him to another remedy, in the pursuit of which he might again be defeated in the same manner by another statute. In one sense, such legislation would affect the remedy only; but, in the constitutional sense, it would be retrospective, injurious, oppressive, and unjust, and, therefore, unconstitutional; and it is not apparent how the constitutional sense, in such a

case, would be elucidated by a distinction between a right and a remedy. The injustice would be manifest; and the test given by the bill of rights is, not the distinction between right and remedy, but the distinction between right and wrong. On other subjects, the ground of judicial decision is not ordinarily understood to be so broad as the general principles of justice : but, on this subject of retrospective legislation, those principles are the constitutional ground amply supported by the authorities. Cooley Const. Lim. 369–383. It is said that a defendant has no vested right in a defence based upon an informality not affecting his substantial equities, and that formal defects and irregularities may be cured by retrospective legislation. Cooley Const. Lim. 370, 383. That is merely saying that the whole subject stands on the ground of substantial equity. What are formal and what are substantial defects, in particular cases, may not be an easier problem than the application of the general equitable principle. In whatever form the question is put, it is not easy to lay down a universal rule (any narrower than the general principle), by which such an answer can be readily obtained, in every case, as the principle requires. It is natural that courts, pressed by the difficulty and inconvenience of deciding causes on so broad a principle, and accustomed to the guidance of more limited rules and specific precedents, should seek some path more restricted, sharply defined, and easily followed, than the unbounded expanse of justice. But it may be doubted whether some of the attempts made to lay out such a path have not tended to disseminate contracted and obscure views of the principle on which the constitutional prohibition is based, and to embarrass its operation.

Without undertaking to establish a rule for the disposition of other cases of a different kind, we think the application of the act of 1872 to this case would be an inroad upon the conservative constitutional ideas that have prevailed in this state. In *Woart v. Winnick*, 3 N. H. 473, 481, 482, it was held that the legislature cannot prescribe new rules for the decision of existing causes, so as to change the ground of the action or the nature of the defence; that it is most manifestly injurious, oppressive, and unjust, that, after an individual has, upon the faith of existing laws, brought his action, or prepared his defence, the legislature should step in, and, without any examination of the circumstances of the cause, arbitrarily repeal the law upon which the action or the defence had been rested ; that such an exercise of power is wholly irreconcilable with the spirit of our institutions, and with the great principles of freedom upon which they are founded ; and that a repeal of a statute of limitations could not be applied to a pending suit to take away a defence that had accrued at the time of the repeal. Suppose the general statement, that the nature of the defence cannot be changed, is to be understood with the qualification that the defence is based upon substantial equity, and not upon a mere informality : the defence here is, that the suit is brought by several persons on a joint cause of action which does not exist; that the cause of action, created by the statute, is vested by the statute in the one

person who first brings a suit for the penalty ; that, as the right of action vests in that one person, it has not vested in these three plaintiffs, Kent, Cossitt, and Rogers, either jointly or severally ; that it has not vested in Kent alone, nor in Cossitt alone, nor in Rogers alone, because neither of them alone brought the suit, and there is no fact or fiction, recognized by law, that can, in this suit, confer on either one of them a right of action which is not yet his, and which the law confers only on the one person who brings the suit; that the defendant is not now liable to the plaintiffs, or either of them ; and that, to allow two of them to withdraw, and the other one to prosecute the suit, would render the defendant liable to a person to whom he is not now liable,—would impose upon him a liability that has no existence in law or in fact.    Is this a defence of substance and equity, or of form and technicality ? The defence of the statute of limitations is, in some cases, inequitable in point of fact ;  but it was held, in *Woart* v. *Winnick*, that, as a matter of law, it is a defence which it is inequitable to take away by retroactive legislation.    Looking at the origin, nature, and object of the cause of action in a penal suit of this kind, and the method in which it accrues to one person, we are unable to say that the defence in this case is not an equitable one within the meaning and protection of the bill of rights.    And, giving effect to the prohibition in the sense of it as expounded by the letter and spirit of our numerous decisions, and the general understanding of the legal profession, we are of opinion that the act of 1872 cannot be applied to this suit, and that the amendment desired by the plaintiffs cannot be made.          *Motion denied.*