NATIONAL PEMBERTON BANK *vs.* EDWARD F. PORTER.

Essex.    November 8, 1877; May 2. — September 28, 1878.

A national bank which purchases a promissory note from an indorsee may maintain an action thereon in its own name against a prior party thereto, without regard to the question whether the purchase was one which it was authorized by law to make.

CONTRACT on a promissory note dated January 11, 1876, for $10,000, signed by James O. Ives & Co., payable in four months from date to the order of the defendant, and indorsed by him, "waiving demand and notice." Writ dated June 28, 1876.

At the trial in the Superior Court, before *Gardner*, J., there was evidence that the plaintiff, a national bank established at Lawrence under the laws of the United States, purchased the note in Boston from one Benyon, the president of the Exchange Bank in Boston, a few days after its date, paying its face value, less interest, therefor.

The defendant asked the judge to rule that the plaintiff, being a national bank, had no power or authority, under the U. S. St. of June 3, 1864, §§ 6, 8, 30, 39, and the U. S. Rev. Sts. §§ 885, 3407, 5133-6, 5197, to purchase the note in suit, and therefore had no title to the note. The judge declined so to rule; but ruled that the action could be maintained, and ordered a verdict for the plaintiff. The jury returned a verdict accordingly; and the defendant alleged exceptions.

The case was argued at the bar in November 1877, and additional briefs were submitted to the court in May 1878.

*L. W. Howes*, for the defendant.

*D. Saunders & C. G. Saunders*, for the plaintiff.

LORD, J. The plaintiff bank brings this action against the defendant as the indorser of a promissory note. The note is in the possession of the bank as the holder of it. The defence is, that the plaintiff purchased the note of one Benyon; that the plaintiff is a national bank; that a national bank has no authority to buy a promissory note; that the purchase of it was therefore *ultra vires;* and the conclusion of law which the defendant claims to be the legal result of these facts is that no action can be maintained upon the note by the bank. It is important that

we do not confuse our ideas by the use of words, and it is therefore necessary to determine what is the exact contract in suit. The contract is in writing. In form it is a negotiable promissory note. Its legal effect is an absolute agreement on the part of the maker to pay to the payee, or to any indorsee of the instrument, a sum certain on a day certain; while it is also a conditional promise, on the part of the indorser to the indorsee, to pay the same sum upon the default of the maker and due notice to himself. In this case, it is conceded that such condition has been performed or waived, so that the promise of the indorser has become absolute. On these points there is no controversy. The contract therefore, in itself, is one which may lawfully exist between these parties. It is the precise contract which exists between the parties to every note discounted by a bank in the ordinary course of banking business which national banks are authorized to transact. No claim is made that the promise was not made upon a full consideration; or that any fraud was practised upon any party to the contract; or that it has been paid; or that any equities exist between the maker or any indorser and the holder; or that, under the form of a lawful contract, was concealed any usurious device; so that the contract in itself has no taint of usury, of fraud or of illegality.

What is the contract which it is said is *ultra vires?* Not the contract in suit, but another contract, to wit, the contract with Benyon, who is not in any sense a party to the contract in suit; nor is it necessary to the maintenance of this action to connect him with it. The contract with Benyon, assuming such a contract to have been made, and, for the purposes of this discussion, assuming it to have been *ultra vires,* is not executory; this suit is not to enforce it; but it has been fully and completely executed. It is true that the contract with Benyon was one of which the contract in suit was the subject matter. The question then arises, Can a party to a contract in itself lawful, and into which all the parties to it had authority to enter, be made null or be incapable of enforcement, because the plaintiff has entered into and fully performed, with another and totally distinct party, a contract in reference to it which was unauthorized, even though by such contract he becomes a party to the contract in suit?

There is nothing of mystery or of sanctity in the use of the words of a dead language, *ultra vires;* and although it is a concise and convenient form by which to indicate the unauthorized action of artificial persons with limited powers, still it is as applicable to individual as to corporate action. An illegal act of an individual is as really *ultra vires* as the unauthorized act of a corporation. We do not see in what respect there is any difference, in legal effect, between the obtaining of a note by an individual and by a corporation, if it be obtained wrongfully.

Applying the rule to a natural person, Would it be a defence, by a maker of an unpaid promissory note, to prove that the plaintiff obtained the note in a fraudulent bargain ? or that the plaintiff took it from one not a party to it, in payment for intoxicating liquors illegally sold ? or that he took it from a third person in discharge of a gaming debt, or in any transaction in which the person had no right to be engaged ? These are all cases in which the party would acquire his title by transactions beyond his authority. These are questions which, under the law of this Commonwealth, it is not necessary to decide or consider.

In this Commonwealth, it is not necessary that the plaintiff in a suit upon a promissory note should have the legal title or beneficial interest in the note, nor indeed that he should have any title or any interest in it. Adjudications of this point, commencing with *Little* v. *Obrien,* 9 Mass. 423, are scattered through more than a hundred succeeding volumes of reports, embracing a period of about seventy years, have been unquestioned during all that time, and are daily recognized as the law of the Commonwealth. In *Little* v. *Obrien,* this very question of *ultra vires* was raised by the defendant, and both the questions, whether a contract with a corporation was *ultra vires,* and whether a plaintiff having no title could sue, were raised and elaborately argued for the defendant, by Mr. Story, who afterwards and for so long a time adorned the bench of the Supreme Court of the United States. The cause was argued before that eminent magistrate, Chief Justice Parsons, and his distinguished associates, Justices Sewall and Parker. In announcing the decision, the court uses this suggestive language: "Whether, for this misbehavior of the corporation, the government might not

seize their franchises, upon due process, is a question not now before us." In *Chester Glass Co.* v. *Dewey*, 16 Mass. 94, there was a claim for goods sold and delivered to the defendant, and among other defences was the defence that the sale of the goods was *ultra vires;* that, by its charter, the plaintiff corporation was prohibited from engaging in such trade; and, in addition, it was also contended that the corporation never legally organized, and therefore had no existence as such. As to the last objection, it was said that, even if it existed, it would not be open to a member of the corporation, which had been in operation *de facto*, doing business for a number of years. In relation to the claim that the sale of goods was *ultra vires*, Chief Justice Parker, after expressing a conviction that the sale as made was not a violation of the spirit and intention of the act of incorporation, adds, "but the Legislature may enforce the prohibition, by causing the charter to be revoked, when they shall determine that it has been abused." Without deeming it necessary to decide that these two cases are authority for saying that it is not open to an individual to raise the question whether a collateral act of a corporation is within its corporate power, it will be found, when that question is directly presented, that there are many decisions of courts which tend to that result.

In this Commonwealth, the only questions which are involved are, First, Has the plaintiff legal capacity to sue ? Second, Is the plaintiff the holder of the negotiable note declared on? On neither of these questions can there in this case be any doubt. Even if it were necessary to show that the contract was one which the plaintiff is competent to hold, then, as we have already seen, the contract is such a one ; and the fact that the holder became possessed of it in the manner claimed is a wholly immaterial fact. To illustrate further the fact that it is not necessary that the plaintiff bank be the owner of the note in order that an action may be maintained upon it, suppose that this note had been discounted in the ordinary course of business, and the bank had filled the blank indorsement, as at any time it had authority to do, and as before judgment is entered it is proper to do, by writing over the indorser's name the words, "Pay the within to the National Pemberton Bank," and, under its authority to negotiate the note, had transferred it, without

indorsement, for its full value, to a third party. Such third party could maintain an action upon it in the name of the present plaintiff, although the present plaintiff has no interest in it. Suppose, for the sake of argument, that the plaintiff is not the *bonâ fide* holder of the note, within the meaning of that phrase when used in law in relation to the holder of a negotiable promissory note, what would be the result of such admission? Simply this, that any defence might be made to the note which could be made between any of the parties to it, as between one another; nothing more. But in this case there are no equities which could be pleaded to the notes in the hands of any party.

If the act of purchase was wholly unauthorized, the utmost legal effect is that the transaction was wholly void, and Benyon is still the owner of the note. What then? The most that could be claimed is, that the bank receives the payment of it in trust for the real holder; precisely as it would, if it had recovered the amount, as in the case above supposed, after it had sold the note to a third person. With the equities between such parties, this defendant has no concern.

It is said that, if this be the correct view of the law, the statute in relation to usurious contracts would be nullified; that a bank could say to a customer, " We cannot discount this note, but we will buy it," and thereupon does buy it, at a rate at which they were not authorized to discount it, and thus avoid the penalty of usury. Such result by no means follows. If, in this case, the intervention of Benyon were a mere device for the purpose of obtaining, as between the original parties to the note, a loan of money at a usurious rate of interest, the question presented would be a very different one. There is here no such claim or pretence. The amount given for the note was the face of the note, less the legal interest from the time of the alleged purchase to the maturity of the note. There are, however, other appropriate considerations in such case. The suit then must be between the parties to a wrongful contract still executory; and whether, in such case, the plaintiff would not be estopped to deny that such contract arose in any other mode than by discount, we need not discuss. It is quite sufficient to deal with questions as they arise, without speculating upon what would be the legal effect of a totally different condition of facts.

Two cases have arisen in Minnesota ; one in 1876, *Farmers &
Mechanics' Bank* (a state bank) v. *Baldwin*, the other in 1877,
*First National Bank of Rochester* (which was a national bank) v.
*Pierson*, in each of which it was decided that the plaintiff could
not recover upon a promissory note purchased by it, ˙ecause
such purchase was *ultra vires*, and consequently conferred no
title to the note. If we accept the result of these decisions,
there is nothing in either of them in conflict with these views.
By the law of Minnesota, no action can be maintained upon a
chose in action, except by the real owner ; and, as will be seen
by reference to those decisions respectively, the question which
the court passed upon was whether the plaintiff acquired a title
to the note in suit. In *Farmers & Mechanics' Bank* v. *Baldwin*,
the discussion of the subject by the court is thus opened : "In-
asmuch as the ownership of the note by plaintiff is put in issue
by the pleadings, the question necessarily arises whether the
plaintiff had the corporate power to make the purchase in the
manner it did, and whether, by such alleged purchase, it ac-
quired any title which it could enforce against either the maker,
or Baldwin, the indorser." And the concluding paragraph of
the opinion commences thus : "Having no corporate capacity to
make the contract of purchase, the plaintiff never acquired any
title to the note in suit."    23 Minn. 198.    In *First National
Bank of Rochester* v. *Pierson*, the· ruling of the court below,
which came before the Supreme Court for revision, as quoted
by the judge who delivered the opinion, was "that the plaintiff,
a national bank corporation, had no authority to purchase or
traffic in promissory notes as choses in action, and did not in
law acquire, by the supposed purchase, any title to the note in
question, and cannot recover upon it in this action." The judge
then, having previously referred to the fact found by the court
below, that the plaintiff purchased the note, proceeds : "Upon
the fact as thus found, it will be seen that the only question pre-
sented is, whether a national bank, created," &c., "is authorized
to deal or traffic in promissory notes, as a species of personal
property, or to acquire any title to such paper by a purchase."
24 Minn.    .  It appears therefore that in those cases the
only question raised was the question of title to the notes in
the plaintiff ; and that question, as we have seen, is in this Com-

monwealth wholly immaterial; for we have no such statute as the statute of Minnesota, requiring a suit to be brought in the name of the real owner of a chose in action, and it is the established law that the holder of a negotiable promissory note may bring suit upon it, whether in law or in fact he be or be not the real owner of it.

In *Rohrer* v. *Turrill*, 4 Minn. 407, the defence to an action on a promissory note was that the plaintiff was not the owner of the note, but had disposed of it to a third person in fraud of creditors. The court say that the fact that the plaintiff had disposed of the note to a third person is a complete defence to the action, and add that it is no concern of the defendant whether that disposition was fraudulent or not; as he had not paid the note, but owed it, it was not a matter for him to inquire by what arrangement it went into the hands of a third party; the actual transfer was to him a perfect defence; and the court cannot avoid suggesting the incongruity of the claim of the defendant that the title of the third party was fraudulently obtained, which, if competent, would simply show that such transfer passed no title, and that the suit was properly brought in the name of the plaintiff, who would be the real owner in such case.

We are therefore of opinion that there was no error in the refusal of the presiding justice to rule as requested by the defendant's counsel. The ruling asked was, upon the facts of the case, a wholly immaterial one, upon which the court was not called upon to make any ruling.     *Exceptions overruled.*