HALL & a., *Assignees*, v. PARIS & a.

Depositors in a savings-bank are stockholders, and not creditors, within the meaning of Gen. St., c. 152, ss. 1 and 17.

After the appointment of assignees of a savings-bank in process of liquidation, a depositor cannot set off his deposit in payment of a debt due from him to the bank.

Neither a pledge by the depositor of his deposit-book to the bank as collateral security for a debt due from him, nor an expectation, at the time the debt is created, that he will apply his deposit in payment, entitles the depositor to set off the deposit in payment of the debt.

An agreement with the bank by a depositor that his deposit shall be applied next quarter-day in payment of his indebtedness to the bank, made with the understanding that the application is then made, and nothing remains to be done in execution of the agreement, entitles the depositor to a set-off of his deposit against his debt to the bank.

A special deposit, made to be withdrawn upon call, may be set off against the depositor's debt to the bank.

IN EQUITY. The plaintiffs are assignees of the Carroll County Five Cents Savings-Bank, in process of liquidation. The defendants are depositors of the savings-bank, and severally indebted to it by promissory note, and claim the right to set off their deposits in payment of the notes, to which the plaintiffs object. Paris and some other defendants, at the time their. debts were contracted, proposed to withdraw their deposits, and borrow a less sum of money than they did, but, by the advice of the treasurer, they let their deposits remain, borrowed the whole sum needed, gave their

notes for it, and pledged their deposit-books as collateral security. They expected to apply their deposits in payment of the notes.

Two years before the suspension of the bank, Copp, one of the defendants, requested the treasurer of the bank to apply his deposit in payment of his note, and the treasurer agreed to do so next quarter-day, but at the time of suspension had not endorsed the deposit on the note, nor entered the transaction on the books of the bank. Copp claims the right of set-off.

Paris, for business convenience, was permitted by the treasurer to keep at the bank a special deposit to be drawn out "at call." At the time of the suspension there remained with the bank, of this deposit, a portion of the proceeds of a draft deposited by Paris for collection, and he claims the right to set this off against his debt.

The bank was established by a charter, "for the purpose of enabling industrious persons of all descriptions to invest their spare earnings in a safe and profitable manner."

Section 3 of the charter is: "All deposits of money received by said corporation shall be used and improved by said corporation to the best advantage, and the income or profits shall be by them applied and divided among the depositors, with such reasonable deductions as may be necessary to defray the unavoidable expenses of the corporation, and the principal of such deposits may be withdrawn at such times and in such manner as said corporation shall direct and appoint."

Section 13 makes the bank subject to all the laws relating to corporations of a similar nature.

The plaintiffs ask a determination of their fiduciary duty, and of the defendants' rights in the premises.

*Hall*, for the plaintiffs.

*Hibbard*, for the defendants.

ALLEN, J. By the statutes of this state relating to the winding up and distribution of the property of banks, including savings-banks, it is provided that "the proceeds of such property shall be holden,—

"I. To pay the expenses of the assignment.

"II. To pay all bills issued by the bank *pro rata*.

"III. For the payment in equal proportion of all debts, claims, and obligations owing by the bank.

"IV. The remainder to be divided among the stockholders, according to their interests." Gen. St., *c.* 152, *s.* 17.

The statute received a construction in *Simpson* v. *Savings-Bank*, 56 N. H. 466, 477, where it was decided that depositors of savings-banks stand in the same relation to their banks as stockholders to banks of discount, and, in case of loss or insolvency, are entitled

only to their *pro rata* share of the deposits after payment of all other liabilities of the bank.   By the charter of the bank and by the general law, each depositor is entitled to his share of the profits, and is bound to bear his share of the losses.   All other claims being first satisfied, the depositor is entitled to his proportionate share of the assets, and there is no contract, express or implied, on the part of the bank, to pay any more.   The depositors, then, are not creditors of the savings-bank, but, within the meaning of the law, stockholders, whose claims are postponed to those of creditors.

The charter makes the safe keeping and investment for profit of the deposits the sole purpose of the creation of the bank.   The depositors do not personally loan the money deposited, but entrust it to the bank, as their trustee or agent, to be kept, invested, managed, and paid out, according to the provisions of the charter and by-laws of the institution.   If there is profit, they receive it; if there is loss, they share it according to the amount of their deposits.   *Bunnell* v. *Collinsville Saving Society*, 38 Conn. 203; *Huntington* v. *Savings-Bank*, 96 U. S. 388, 393, 394.

The bank is not the separate and independent agent of each depositor, but the holder of a common fund, in which all the depositors are interested; and since the amount which each depositor shall receive, on a final distribution of the assets, depends on the amount realized by the bank from its investments or debts due to it, the claim of a depositor for his share of the assets, and of the bank against him for a debt due to it, are not mutual nor in the same right, and the depositor cannot equitably set off his deposit in payment of his debt to the bank.   *Osborn* v. *Byrne*, 43 Conn. 155; *Sawyer* v. *Hoag*, 17 Wall. 610; *Railroad* v. *Howard*, 7 Wall. 416; *United States* v. *Eckford*, 6 Wall. 488; *Stockton* v. *Mechanics & Laborers' Sav. Bank*, N. J. Chan. Ct., Feb., 1880.

The payment of the debt must precede the payment of the deposit; for the depositor's share cannot be determined until the payment of the debt.   The depositor's share in the assets is not due when the debt may be demanded and sued for, and a claim not due cannot be set off against one due.   *Varney* v. *Brewster*, 14 N. H. 49; *Hardy* v. *Corlis*, 21 N. H. 356; *Toppan* v. *Jenness*, 21 N. H. 232; *Wheeler* v. *Emerson*, 45 N. H. 528.   The claim of the defendants to set off their several deposits in payment of their several debts is disallowed.

The claim of the defendants, that but for the advice of the treasurer they would have withdrawn their deposits and given notes for a less sum, does not give them the right of set-off.   The rights and interests of the parties must be taken as they stood at the time the insolvency proceedings commenced.   No application of the deposits in payment of the notes had been made.   The pledge of the depositors' books as collateral security was not payment, and their expectation that the deposits would pay the debts was not an application for that purpose.   Equity cannot now make the application.

If the agreement of the treasurer with Copp, two years before the suspension of the bank, to apply his deposit in payment of his note next quarter-day, was with the understanding that the application was made, and nothing more remained to be done in execution of the agreement, the application of the deposit was then made in payment of the note. Without such understanding, or with an understanding that something remained to be done as a condition of the execution of the agreement, there was no application of the deposit in payment of the note, and there can now be no set-off. The deposit of Copp is to be set off in payment of the note against him, or not, according as the understanding of the parties referred to shall be found on evidence.

The claim of Paris to set off against his debt the balance of a draft placed in the bank as a special deposit, to be drawn " on call," is a claim for money not deposited according to the charter of the bank, nor in the ordinary course of its business. The authorized business of the bank was to receive and safely invest the depositors' money, under such reasonable regulations as might be necessary to effect that object; and it could not lawfully make a rule applying to one depositor that would not equally apply to all. The charter of the bank gave it no power to receive and pay out money " on call," or to carry on the business of exchanging and collecting commercial paper not incident to or connected with its legitimate business as a holder and investor of the common fund of deposits; and the general depositors should not be made to suffer by unauthorized transactions of this kind. Ordinarily an action cannot be maintained by or against a corporation on a purely executory contract which it had no legal power to make. *Downing* v. *Mt. Washington Road Co.*, 40 N. H. 230; *Franklin Company* v. *Lewiston Institution for Savings*, 68 Me. 43; *Bank* v. *Porter*, 125 Mass. 333; *Bissell* v. *Railroad Companies*, 22 N. Y. 258, 285; *Huntington* v. *Savings-Bank*, 96 U. S. 393; Field Corp., s. 251; Brice's Ultra Vires 42, 729, note (*a*). But when the corporation has received the consideration or enjoyed the benefit of a contract which it repudiates, but which has been executed on the part of any person, and has paid no equivalent on its part, he may recover back the consideration received and enjoyed. *Rich* v. *Errol*, 51 N. H. 351; *Manufacturing Co.* v. *Canney*, 54 N. H. 295, 325. The bank had no legal power to receive the draft to collect and pay out " on call." Having collected the draft, its fruits were so much money, which equity and good conscience required the bank to restore to its owner. The plaintiffs, as assignees, found the money there. It was not placed there as a part of the general deposits, but it was mingled with the general fund. It did not arise from the general business of the bank; it had cost the depositors nothing, and, if used to increase the common fund, they would have the benefit without paying a consideration. The special deposit did not become a general one, subject to the rules governing general deposits.

To effect that result, a contract that was never made must be substituted for one that failed. It is not claimed that Paris was in fault in making the special deposit, and when, for want of authority, the contract failed, the money paid or deposited under the contract belonged to Paris, who paid it. The plaintiffs, having received the unpaid balance of the draft, must account for it to the owner, Paris, who is a creditor to that extent, and is entitled to set off that sum against the debt due from him to the bank.

*Case discharged.*

STANLEY, J., did not sit: the others concurred.