## FRANCESTOWN SAVINGS BANK CASE.

Section 20 of c. 170, Gen. Laws, is a provision for a division of property
owned by the depositors as tenants in common.

A depositor's withdrawal of the amount of his reduced account is not a
gift of his share of undivided deposits to his co-tenants.

When some depositors had withdrawn the amount of their reduced ac-
counts, and others did not withdraw anything until the bank was wound
up, 5 per cent. interest was allowed the latter on the amount of their
reduced accounts, and the remainder in excess of the reduced accounts
was divided proportionally among all who were depositors when the
accounts were reduced.

INSOLVENCY PROCEEDINGS, for winding up the bank as to scaled
deposits. February 5, 1877, the deposit accounts of the savings-
bank were reduced twenty per cent., under Laws of 1874, c. 71, s. 10.
There was then due depositors $115,561.73, and the assets of the
bank at their par value, as they stood on the books of the bank,
amounted to $114,795.99. After the twenty per cent. reduction,
the deposits amounted to $92,449.38, and the value of the assets,
as then estimated, to $99,441.57, leaving a surplus or contingent
fund of $6,992.19. The contingent fund was not separate from
the other assets of the bank.

After the scaling of the deposits, the bank continued business
until April, 1883, paying depositors who called for their money
their deposits as reduced, with five per cent. interest, and selling
securities and investing in new securities, and receiving new de-
posits and investing the same. The accounts of the new deposits,
and the investments made therefrom, were kept separate from the
old deposit accounts and investments. Within a year after the
deposits were scaled, about $50,000 was withdrawn by depositors,
who received the amount of their reduced deposits, and the bank
sold securities and collected money to pay these depositors.

In April, 1883, the trustees took steps to wind up the affairs of
the bank as to the old deposits, and an assignee was appointed to
take possession of the assets of the old bank, and a commissioner
to examine and allow the claims against it. The bank commis-
sioners estimated the value of the assets of the old bank, January
31, 1883, at $55,623.63, and this was substantially the value of the
assets delivered to the assignee. Of this sum about $23,000 was
invested as in 1877, when the deposits were scaled, and the balance
of the $55,000 was in new investments, or cash realized from ac-
cumulations, sales, and collections on securities.

At the same date, January 31, 1883, the bal-
    ance of the scaled deposits remaining was    $42,313.90
Surplus or contingent fund allowed by court
    and commissioners, .      .      .      .      .        6,992.19

Appreciation of assets over estimated value,    $3,124.34
Surplus accumulated by earnings,    .    .    3,193.20

$55,623.63

The commissioner's report divides the depositors into five classes,—(1) those who have withdrawn no part of their deposits since the cut-down; (2) those who have withdrawn a part of their deposits; (3) those who have wholly withdrawn their deposits as scaled, and retained their deposit-books for the purpose of claiming the reduction; (4) those who have wholly withdrawn their deposits as scaled, and surrendered their deposit-books, not expecting ever to receive anything more from the bank (these four classes of depositors all appeared before the commissioner, and claimed to be allowed the full amount of their deposits, including the twenty per cent. reduction: the commissioner allowed the amount of the reduced deposits and interest shown to be due and unpaid to each of these depositors March 10, 1883, and submits their claim to the twenty per cent. reduction to the determination of the court); (5) those who have withdrawn all their deposits except the twenty per cent. reduction, and did not appear before the commissioner, or make any claim against the bank.

Accompanying the report as a part of it, the commissioner furnishes five schedules (numbered 1, 2, 3, 4, 5), containing the names of the depositors belonging to the foregoing classes respectively; the amount of each deposit February 5, 1877; the amount of the twenty per cent. reduction; the eighty per cent. balance; the amount of the eighty per cent. balance without interest, July 1, 1877, January 1, 1878, 1879, 1880, 1881, 1882, and 1883, or until withdrawn; the amount of interest due on the eighty per cent. balance to January 1, 1883; and the full amount of the eighty per cent. balance and interest unpaid March 10, 1883.

The depositors who have not wholly withdrawn their deposits as scaled, claim that the assets in the hands of the assignee should be wholly divided among themselves, and that those who withdrew their deposits are not entitled to any share of the assets now remaining. The commissioner's report and schedules, and any records of the bank or proceedings relating to the reduction of the deposits, are made part of this case. The questions as to what depositors are entitled to share in the distribution of the assets, and in what proportion, are reserved.

*Cross & Taggart*, for depositors who did not withdraw.

*C. H. Burns*, for depositors who withdrew.

SMITH, J. The depositors, on the day their accounts were reduced to eighty per cent. of their value, as previously shown

upon the books of the bank (February 5, 1877), were the equitable owners of the securities and other property of the bank.    The value of all the assets of the bank on that day was not sufficient, if divided among the depositors, to restore to each one the par value of his deposit account.    The bank, being insolvent, could not pay all its depositors in full.    If it should pay some in full, it could pay others only in part, and those who should come last for their money might receive nothing.    The situation was one that called for some action whereby the rights of the depositors among themselves could be protected.    To meet an emergency of this character, the act of 1874 was passed.    It provided for a reduction of the deposit account of each depositor, so as to divide the loss equitably among the depositors.    Laws 1874, c. 71, s. 10 ; G. L., c. 170, s. 20.    In such case, when the accounts are reduced so as to equal the value of the assets, no more and no less, and the assets are divided among the depositors according to the accounts as reduced, each will receive his proportionate share of the assets, and justice will thereby be done to all the depositors.

By the so-called reduction, the right of the depositors to the property of the bank was not concluded nor affected; nor were they deprived of their right to an equitable share upon a division of all the assets of the bank.    The statute expressly provides that if a bank, after such reduction, shall realize from the assets a greater amount than that fixed upon at the time of the reduction, the amount so realized shall be equitably divided and credited to the accounts of the depositors which had been reduced.    Laws 1874, c. 71, s. 10 ; G. L., c. 170, s. 20.    It is a statute of partition that does not attempt to transfer any right of property from one depositor to another, nor require any depositor withdrawing his deposit to the extent of the limited partition, to give his share of the undivided property to those who withdraw nothing.    The rule must be the same in the absence of any statute.    The funds being held by the bank as trustee for the benefit of the depositors, the gain on the funds, as well as the funds themselves, belongs to the depositors.    A depositor, by withdrawing his account after a reduction, does not thereby abandon his property in the assets in excess of the amount of the accounts as reduced, nor does the statute undertake to deprive him of his property in such excess. The action of the tribunal making the reduction is not a judgment depriving him of his property in any of the assets of the bank.    In *Simpson* v. *City Savings Bank*, 56 N. H. 466, 477, *Cushing*, C. J., said,—" If there was anything conclusive as to the final result in the action under the statute of 1874, I should be extremely doubtful of its constitutionality, in so far as it attempted to provide for a permanent adjudication without notice to all the parties who are entitled to be heard."    *Rand*, J., said *(p.* 470), " It will be noticed that s. 10    *    *    does not relieve the bank from the claim of the depositor upon payment of his reduced dividend."    And *Ladd*, J.,

said *(p.* 478), " I cannot see that it [the statute] does anything more than a court of equity would be bound to do upon proper application without any statute, namely, secure a *pro rata* division among its equitable owners of a common fund, which has been placed in the hands of a common agent, to be used by such agent for the common purpose of making gain and profit for the principals." By the reduction of the depositors' accounts to eighty per cent. of their par value, the value of the assets of the bank was. not affected.    They were neither increased nor diminished thereby. They still remained in equity the property of the depositors, and held for their benefit.    The reduction fixed the amount which a. depositor might withdraw without doing injustice to such as might choose to allow their accounts to remain.    The value of the assets being equal to or greater than eighty per cent. of the par value of all the accounts, a depositor, by withdrawing his account as. reduced, obtained no more than his share of the assets of the corporation.

But it is said that the depositors who withdrew obtained an unfair advantage over those who remained, in this, that those who remained were left to bear the whole risk of loss from further depreciation in the value of the assets.    It is argued that those who bore the risk of loss ought to reap the benefit from any gain; and the maxim, " *Qui sentit onus, sentire debet et commodum,*" is invoked in aid of this position.    Those who did not withdraw their eighty per cent., voluntarily assumed the risk of losing it by not withdrawing it.    They allowed their eighty per cent. to remain because they preferred its risk in the bank to its risk elsewhere. By choosing that risk for their eighty per cent. they acquired no title to any part of the excess above eighty per cent. belonging to the other depositors.    The title of the undivided deposits in excess. of eighty per cent., like the title of other undivided property owned. in common, was not divested, without the owners' consent, or due process of law, by anything that has been done in this case under the statute of limited partition.    When one withdrew eighty per cent., he left eighty per cent. for others ; and any excess above eighty per cent.· remained the undivided property of those who· owned it before the partition was temporarily limited to eighty per cent.    In many transactions, like the business of a partnership,. there is sometimes a presumption of fact that the parties intend and understand that each bears a chance of loss because he takes a. chance of profit.    *Eastman* v. *Clark*, 53 N. H. 276, 288, 303, 308. But that presumption does not transfer a share of undivided property from its owner to his cotenants.    In this case the excess above· eighty per cent. remained undivided.

The neglect of some of the depositors to appear before the commissioner and claim their proportionate shares of the assets to be distributed, is not in law an abandonment or surrender of their shares or property in the assets.    In this respect there is no dis-

tinction between depositors who withdrew all their deposits as reduced, and depositors who withdrew a portion or none of their deposits. If their neglect to appear and make claim to a share of the assets is evidence that they intended to surrender their proportion of the surplus and gains to the other depositors, the fact of such intention has not been found; and in the absence of such finding they are not precluded from sharing in the distribution. The depositors are stockholders and not creditors. *Savings Bank* v. *Nashua*, 46 N. H. 389, 399; *Simpson* v. *Savings Bank*, *supra*; *Cogswell* v. *Savings Bank*, 59 N. H. 43; *Hall* v. *Paris*, 59 N. H. 71; and the provisions of Gen. Laws, c. 166, s. 16, do not apply. Creditors who neglect to present and prove their claims are precluded from all benefit of the assets of an insolvent savings-bank. They have precedence over the depositors in the distribution of the assets (s. 17), but only upon condition that they present and prove their claims (s. 16), and not because they as creditors own the assets.

The accounts of depositors are allowed upon such evidence as may be accessible. The books of the bank, it is presumed, generally furnish sufficient evidence for that purpose.

The case finds that some of the depositors withdrew their deposits as reduced, and surrendered their deposit-books, not expecting to receive anything more,—but appeared before the commissioner and claimed to have their accounts allowed. Such depositors are not precluded from sharing in the distribution of the surplus and gains of the bank, unless it is made to appear that they intended to surrender their share in the surplus and gains to the other depositors. The commissioner by allowing their accounts must have found that in giving up their deposit-books they acted in ignorance of their legal rights, and did not knowingly or intentionally surrender their right to share in the surplus and gains. Their accounts were therefore properly allowed.

It may not be possible to adjust the matter of interest between the various classes of depositors with mathematical exactness. It appears that the depositors who withdrew were paid their deposits as reduced, with interest at the rate of five per cent. per annum. In view of all the circumstances, we think it would be equitable to credit the reduced accounts of the depositors who did not withdraw with interest at the same rate, namely, five per cent. per annum, and that the assets be distributed as follows: First, to the depositors who have not withdrawn, to the amount of their accounts as reduced, with interest as above mentioned; and secondly, any balance remaining, to all the depositors at the time of the reduction, in proportion to the amount of their respective accounts as if there had been no reduction.

*Case discharged.*

CLARK, J., did not sit: the others concurred.