Hillsborough,
No. 4659.

HAROLD GORDON

· *v.*

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE & *a.*

Argued June 3, 1958.

Decided July 1, 1958.

*Arthur E. Porter* and *Shereff Brothers* (New York), (*Mr. Porter* and *Mr. Louis Shereff* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden* and *Joseph S. Ransmeier* (*Mr. Ransmeier* orally), for the defendants Public Service Company of New Hampshire, its directors and president.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Richard A.*

*Morse* (*Mr. Morse* orally), for the defendant Manchester Transit, Inc., and its president.

KENISON, C. J.  This is a derivative suit brought by a minority stockholder seeking to rescind the sale of the transportation business by the defendant and for damages on the ground that the sale was illegal and made fraudulently, negligently and imprudently. Originally the defendant operated an electric street railroad system in the city of Manchester.  With the change of time this was converted into a motor bus operation and the defendant sought to sell this transportation business and confine its operations to those of an electric operating company.  After considerable negotiation with the plaintiff, the defendant Manchester Transit, Inc. and others, the defendant Public Service Company of New Hampshire decided to sell the transportation business to the Manchester Transit, Inc.  This transfer and sale of the transportation business was approved by the board of directors of the defendant Public Service Company of New Hampshire and by the Public Utilities Commission, but it was not submitted to or authorized by a stockholders' vote of the defendant company.

I.  Question 3 transferred without ruling is whether the absence of an authorizing stockholders' vote made the sale of the transportation business illegal.  This question in turn depends primarily on the construction to be given RSA 374:32, and particularly the italicized portion thereof, which reads as follows:

"CORPORATE AUTHORIZATION.  If such public utility, or the other party to any such transfer, lease or contract, be a corporation *and if the commission shall find that the public good so requires,* such transfer, lease or contract shall first be authorized by the vote of two thirds of the shares of the capital stock of each of the interested corporations present and voting at meetings duly called to consider the subject; and all statutes regulating, protecting and determining the rights of a dissenting stockholder of a railroad in the case of a lease or union with another railroad shall be applicable, and the rights of any stockholder of such corporation dissenting from such transfer, lease or contract, if the same shall be authorized as above provided, shall be regulated, protected and determined by such statutes."

The plaintiff claims that the words of the statute are ambiguous to the extent that it could mean on the one hand that the transfer *must* be authorized by a vote of the stockholders if the Commission

determines that the public good requires the transfer, or on the other hand, that the Commission *may* require a stockholders' vote if the Commission determines that the public good requires the vote. The plaintiff argues that the mandatory interpretation is the proper one while the defendant contends that the permissive interpretation is the proper one. In this instance it is unnecessary to meticulously examine the specific italicized words in the statute or " . . . go to the dictionaries, the last resort of the baffled judge" (*Jordan v. DeGeorge,* 341 U. S. 223, 234) since the legislative history of the statute clearly demonstrates that it is permissive rather than mandatory.

Prior to 1953, any transfer of public utility property required a vote of the stockholders. R. L., *c.* 289, *s.* 30. In that year Senate Bill 86 (Laws 1953, *c.* 176) inserted the italicized words which now appear in RSA 374:32. Journal of the Senate (1953) *p.* 195. In the records of the Senate Judiciary Committee for April 21, 1953, as filed in the office of the Secretary of State, the purpose of Senate Bill 86 was described as follows: "What we have done in this bill is to amend sect. 30 of chapter 289 [Revised Laws] by revising it so you only have to have a two-thirds vote of stockholders where the Commission finds that the public good so requires." The purpose of the 1953 amendment to what is now RSA 374:32 was to allow the Public Utilities Commission to have discretionary and permissive authority to determine when a stockholders' vote was required for the public good. The Commission also appeared in support of the amendment and so understood its purpose. If the words of the amendment by themselves created some ambiguity, the purpose and intent of the amendment is made certain by its legislative history. RSA 374:32 contains no mandatory requirement that a transfer of any utility property must be approved by a stockholders' vote. Such a vote is necessary only in those cases where the Public Utilities Commission finds "that the public good so requires." RSA 374:32.

It is contended that such a statute is unconstitutional as an unlawful delegation of legislative power to an administrative agency. Admittedly phrases like "public good" and "public convenience and necessity" are broad but they are lawful standards which are consistently applied and sustained in public utility regulation. *Grafton &c. Co.* v. *State,* 77 N. H. 539, 540. It comes too late in the constitutional day to say that "public good" is an unlawful standard for public utility regulation. Davis, Adminis-

trative Law (1951) ch. 2; *Grafton &c. Co.* v. *State,* 77 N. H. 490, 508; *Chicopee Mfg. Co.* v. *Company,* 98 N. H. 5.

The absence of a stockholders' authorizing vote did not make the sale or transfer of the transportation business illegal and the answer to question 3 is "no."

II. Question 1 transferred without ruling is whether the plaintiff is limited to relief only as a dissenting stockholder under RSA 374:32. See also, RSA 367:27. The answer to this question is "yes" in view of *Perkins* v. *Company,* 90 N. H. 534. While there is a conflict of authority as to whether the statutory remedy for a dissenting stockholder is exclusive (13 Fletcher, Cyc. Corporations, s. 5893 (1943 rev. *ed.*)), the *Perkins* decision held that the statutory remedy of a dissenting utility stockholder was exclusive. There has been no statutory change giving dissenting stockholders additional remedies in equity and the *Perkins* case has been followed. *Hackett* v. *Railroad,* 95 N. H. 45.

The argument is made that here we are dealing with a dissenting stockholder who alleges illegality and fraud and therefore the *Perkins* case is not controlling. There are policy considerations which may support the view of several jurisdictions that the statutory remedy for dissenting stockholders in cases of alleged illegality and fraud should be alternative and not exclusive. Developments in the Law — Multiparty Litigation in the Federal Courts, 71 Harv. L. Rev. 877, 966-967 (1958). Ballentine, Corporations, s. 298. However our Legislature has made no provision for alternative remedies. Other jurisdictions that formerly allowed alternative remedies in equity in cases involving illegality and fraud have seen fit to specifically provide that the statutory remedy shall be exclusive. Note, 47 Mich. L. Rev. 1010. *Cf.* Hornstein, The Death Knell of Stockholders' Derivative Suits in New York, 32 Cal. L. Rev. 123. The policy expressed in *Perkins* in 1940 has been adhered to by the Legislature since that time by re-enactment of the statutes which limit the remedy to the statute in all cases. "To secure the public interest that the transfer be made, the utility statute creates a special and exclusive remedy for all objecting stockholders unwilling to accept their contract rights, and the remedy is enforceable regardless of the unfairness of the transfer as to them . . . . " *Perkins* v. *Company,* 90 N. H. 534, 540. If additional remedies are desirable in special cases, the policy must be indicated in the public utility statutes.

III. Question 2 as transferred required an answer only if

question 1 were answered in the negative and therefore has not been considered.

In summary we hold that transfer and sale of the transportation business was not illegal because of the failure to obtain a stockholders' vote when not required by the Public Utilities Commission and that the plaintiff's remedy under RSA 374:32 is exclusive.

*Remanded.*

All concurred.