Hillsborough,
No. 6049.

MANCHESTER SAVINGS BANK *et als*

*v.*

NEW HAMPSHIRE ASSOCIATION OF SAVINGS BANKS.

June 30, 1970.

342

*McLane, Carleton, Graf, Greene & Brown* and *Robert A. Raulerson* ( *Mr. Raulerson* orally ), for the plaintiffs Manchester Savings Bank, Manchester Trust Company, and Manchester Holding Corporation.

*Upton, Sanders & Upton* ( *Mr. Richard F. Upton* orally ), for defendant New Hampshire Association of Savings Banks.

*Maurice P. Bois,* Guardian Ad Litem, pro se.

*Cleveland, Waters & Bass* and *P. James Riordan,* for National Association of Mutual Savings Banks, amicus curiae, filed no brief.

DUNCAN, J. On August 16, 1968, plaintiffs herein filed in the superior court, under RSA ch. 388, their petition seeking approval of a proposed union or merger of Manchester Savings Bank and Manchester Trust Company through use of the plaintiff holding corporation, in accordance with a plan of reorganiza-

tion previously approved by the corporators, trustees, and stockholders of the respective principals. Under the plan the savings bank, a state chartered mutual savings bank, would be converted into the trust company, a state chartered trust company having capital stock, the savings bank depositors receiving voting trust certificates equivalent to their share of the savings bank surplus.

In December 1967, the savings bank had acquired all of the outstanding capital stock of the trust company not previously held by the bank. On April 4, 1968, the Bank Commissioner had ruled that the bank had thereby violated the investment requirements of RSA ch. 387, and ordered that it bring itself into compliance with those requirements by divesting itself of its illegal investment. Under RSA ch. 541, the bank on June 19, 1968 appealed to this court from the order of the Bank Commissioner, and its appeal is pending in this court.

The defendant New Hampshire Association of Savings Banks, as a depositor in the Manchester Savings Bank, appeared in answer to the petition for approval of the merger, alleging that the merger or consolidation had not been lawfully authorized, and seeking denial of the petition.

The petition was referred to a Master ( *Arthur H. Nighswander,* Esq. ). After hearing, the master ruled that the plan had been legally and duly approved by the parties thereto, and would promote the public convenience and advantage. On November 26, 1969, the report and supplementary report of the master were accepted by the Superior Court ( *Leahy,* C.J. ) and a decree in accordance therewith was ordered, subject to the exceptions of the association. The questions presented by the exceptions of the parties were reserved and transferred by the presiding justice.

The issues presented in the briefs and arguments before us pertained solely to the validity of the adoption of the plan of merger; the findings and rulings that the merger will promote the public convenience and advantage and the interests of the parties thereto are not in question. The master ruled that the savings bank association, as an owner-depositor of the savings bank, has legal standing to question the legality of the plan, and of the bank's acquisition of the stock of the trust company which is an essential part of the plan.

As previously stated, the savings bank acquired the outstanding stock of the trust company in 1967. The master found that its primary purpose in so doing was no investment, but "acquisition through stock control of such commercial banking powers as were contained in the charter of Manchester Trust Company."

On July 31, 1968 and while its appeal from the order of the Bank Commissioner was still pending in this court, the savings bank as sole stockholder of the trust company voted pursuant to authorization by the trustees of the savings bank to consolidate the trust company into the savings bank. On the same date the trustees of the savings bank also approved the plan of reorganization and authorized its submission to the corporators of the savings bank. Thereafter the corporators of the savings bank on August 8, 1968 voted to consolidate with the trust company as provided by the plan, and also adopted the plan of distribution proposed.

On December 2, 1968, the savings bank entered into an agreement with the trustees of the Bean Foundation a charitable trust, pursuant to which the bank sold to the foundation trustees 375 of the 500 shares of stock of the trust company held by the bank, at net asset value as of November 30, 1968. The agreement provided that the bank should have an irrevocable option to reacquire the stock prior to December 31, 1972, at its then net asset value, to be exercised only if the merger should be approved. At all material times the foundation trustees were also trustees of the savings bank.

On December 9, 1968, the foundation trustees, voting seventy-five percent of the trust company stock, voted to ratify and confirm the action of the trust company stockholders taken on July 31, 1968 (by the savings bank), by which it was voted to consolidate with Manchester Savings Bank; and the foundation trustees also voted to ratify and confirm the action of the directors and officers of the trust company taken pursuant to the plan of reorganization, and to authorize and direct them to take all action necessary to consummate it. This action of the foundation trustees the master ruled "cured any defects in the legality of the previous votes" adopted on July 31, 1968 while the stock was held by the savings bank. Accordingly the master also ruled that "the merger has been properly and legally authorized."

The plaintiffs contend that transfer of seventy-five percent of the trust company stock to the foundation trustees operated to bring the bank's investment in the trust company stock into compliance with RSA 387:13 ( I ), if not previously in compliance with law ( *see* RSA 387:18 ), and thus rendered the order of the Bank Commissioner moot. They also contend that, contrary to the Commissioner's ruling, the investment in all of the stock of the trust company was lawful under the statutes of this state, and in particular RSA 387:18 and RSA 384-B:1 ( IV ), relating to bank holding companies. However, like the master, we find it unnecessary to decide this issue.

With respect to the sale of the trust company stock to the foundation trustees, the master found and ruled as follows: " The Master rules, therefore, that the Manchester Savings Bank fully and effectively divested itself of seventy-five percent of the stock of Manchester Trust Company, and its holding of the remaining amount up to twenty-five percent, as well as the fact that it had an option to repurchase seventy-five percent of the stock at the time merger becomes effective, is not in violation of RSA 387, is in accordance with the Bank Commissioner's order, and does not thereby render the plan of reorganization illegal. The Master has not overlooked the claim that such action was ultra vires, but regardless of whether or not the original purchase of the stock was ultra vires, it appears to be cured by the divestiture which was in fact directed by the Bank Commissioner. "

With respect to the option, the master had previously made the following findings and rulings: " It does not appear that the Savings Bank paid anything for the option to repurchase the stock. Therefore, it cannot in any sense be said that the Savings Bank continued to have any investment in 375 shares of Manchester Trust Company after the sale to the Foundation. It appears that the sale was completed and the stock was paid for. From the standpoint of the depositors of the Manchester Savings Bank, even if the original investment of bank funds in 375 shares of Manchester Trust Company was illegal, the stock was no longer held by the Bank after sale to the Foundation. "

In these findings and rulings we see no error. The absence of separate consideration for the option was pointed out by the master. *See* 55 Am. Jur. Vendor and Purchaser *s.* 32. It could properly be found that the option was not a reservation of a

vested interest in favor of the savings bank. If the voting of the stock in favor of the consolidation by the savings bank was ineffective because ultra vires and in violation of RSA ch. 387, the vote of the foundation trustees confirming a void vote adopted by the bank would not serve to validate it. But the foundation trustees also voted to direct and authorize the trust company officers and directors to proceed with consummation of the plan, thus demonstrating approval of the plan by the stockholders independently of the prior vote of the savings bank as stockholder. The quoted findings and rulings of the master are sustained.

This presents the question of the effect of the provision of the plan which commits the savings bank to acquire the trust company stock for a second time, for the purpose of transferring it to the holding company prior to distribution of scrip to the depositors. The defendant contends that the bank has no authority to expend funds of its depositors except for lawful investment. The master found and ruled: " The holding of the option to repurchase the stock in the event the merger becomes effective is not ultra vires, or illegal, and the repurchase of the stock at the time of merger will not result in a violation of RSA 387 as it will not continue to be held as an investment by the Manchester Savings Bank but will be immediately exchanged in accordance with the plan of reorganization. "

The plan itself indicates that a primary step in consummation of the plan will be the transfer of the banking assets of the savings bank to the trust company, subject to the latter's assumption of the bank's liabilities. Specifically excepted from the assets to be transferred is the capital stock of the trust company. With respect to liabilities to be assumed by the trust company, the plan specifically provides that depositors having accounts with the savings bank " at the close of business on the Closing Date shall automatically become . . . depositor[s] in Trust Company for a like amount . . . upon the same terms and conditions . . . . "

We conclude that reacquisition of the trust company stock by the savings bank, after it has ceased to do business as a savings bank, and solely for the purpose of exchanging the stock for shares of stock of the holding company, the beneficial interest in which is to be distributed to the depositors, will in no realistic sense be an " investment " by the savings bank controlled by RSA ch. 387. We do not consider that the provisions of RSA

ch. 387 were meant to frustrate a consolidation of banks which RSA ch. 388 was designed to permit. So far as the depositors are affected, their interest in the surplus of the savings bank is preserved by converting it to an interest in the equity of the trust company which will own the banking assets formerly held by the savings bank. Hence no aspect of "investment" by the savings bank in trust company stock is involved. If there is investment in any true sense of the word, the investment will be owned by the depositors, whose individual interests therein may be disposed of as they see fit.

The savings bank does not shirk its obligations to its depositors by executing a plan which provides for satisfaction of these obligations by means found to further the interests of the depositors and the institutions concerned, as well as the public convenience and advantage. To the extent that the surplus of the savings bank is security for the interests of the depositors therein, that security will be maintained in the same proportions, in the form of scrip supported by the stock of the trust company held for the benefit of depositors.

We find no error in the action of the master, or in the order of the superior court for a decree in accordance with his report.

*Exceptions overruled.*

GRIFFITH, J., did not sit; the others concurred.