Coos
No. 6605

*In re* CITY SAVINGS BANK OF BERLIN
AND BERLIN CITY NATIONAL BANK

July 24, 1973

*McLane, Carleton, Graf, Greene & Brown* and *Robert A. Raulerson (Mr. Raulerson* orally) for the petitioner banks.

*Upton, Sanders & Upton (Mr. Richard F. Upton* orally) for the New Hampshire Association of Savings Banks.

*Pierre J. Morin,* guardian ad litem, filed no brief.

KENISON, C. J. This action involves a petition for approval of the consolidation of City Savings Bank of Berlin and Berlin City National Bank under RSA ch. 388. The issue presented on this appeal is whether dissenting depositors in a mutual savings bank are constitutionally entitled to a right of appraisal and cash payment option for their share of the bank's surplus.

The merger plan provides that the Berlin City National Bank would convert from a federally chartered national bank to a state chartered trust company and that deposits in the mutual savings bank, City Savings, would be transferred to the new trust company. *See* RSA 388:6. Depositors in the mutual savings bank would receive trust company stock for

their share of the surplus of the savings bank. The New Hampshire Association of Savings Banks ("Association") asserts that dissenting depositors in the savings bank should have the option of receiving cash, in lieu of stock, for their share of the surplus.

The petition for consolidation of the banks was filed in superior court on January 6, 1972. RSA 388:1. After providing for due notice to interested parties, the court referred the petition to the bank commissioner, Mr. James W. Nelson, on May 9, 1972. RSA 388:2. As a depositor in City Savings, the association appeared to protest certain aspects of the merger plan including the absence of a cash option for the savings bank depositors. The bank commissioner held a hearing on June 29, 1972 (RSA 388:3), and subsequently filed a report with the superior court recommending that the merger be approved without a cash option plan as proposed by the association. On December 1, 1972, the Superior Court (*Loughlin,* J.) acccepted the report of the bank commissioner, pursuant to RSA 388:4 and subject to the association's exceptions which were reserved and transferred to this court.

The association states the question for decision in its able brief as follows: "May the objecting depositors of a mutual savings bank which is consolidated into a resulting commercial bank with capital stock, be required to accept payment for the value of their equity in the surplus of the savings bank in shares of the capital stock of the resulting commercial bank, without the option of having their interests appraised and paid for in cash: (a) as a matter of constitutional law, or (b) as a matter of justice and equity?" Specifically, the association claims that approval of the merger plan without a cash option would amount to a taking without just compensation and a denial of equal protection under the laws.

Unlike some other States, New Hampshire has no statute requiring that depositors in a mutual savings bank be given a cash option in the event of a merger. *Cf.* Ind. Stat. Ann. § 18-1012 (d) (1) (Burns 1964); Ore. Rev. Stat. § 716.920 (1) (1971). This State did have a statute at one time that might have required a cash option. Rev. L. ch. 311, § 8 (1942). This section was deleted by Laws 1947, ch. 123, §4 in a manner indicating that the legislature did not consider

the issues presented by this case. We agree with the parties that this legislative action is irrelevant to this case and that the legislature should be considered to have remained silent on this subject.

The association rests its case upon the similarity of mutual savings bank depositors to the stockholders in a commercial bank. This premise is in many respects correct, as indicated in a line of our cases from an earlier day. *E.g., Cogswell v. Bank,* 59 N.H. 43 (1879); *Francestown Savings Bank Case,* 63 N.H. 138 (1884); *Bank Commissioners v. Banking Co.,* 74 N.H. 292, 67 A. 583 (1907). These old cases, however, which generally deal with the distribution of a bank's assets upon insolvency, show more than anything that the depositor in a nineteenth century mutual savings bank was investing in a risky operation. Since the capital of the bank originated with the depositors, it was only logical and equitable that surplus earnings should accrue to their benefit and be distributed to them upon the bank's liquidation. This is a far cry from the banking situation which obtains today, where mutual savings banks are generally financially stable and deposits are federally insured. Having no voice in the management of the affairs of the bank, a depositor today in a mutual savings bank is an "owner" of the bank and its surplus more in theory than in reality; in most respects his "'ownership' is only a technical fiction." Kreider, *Who Owns the Mutuals? Proposals for Reform of Membership Rights in Mutual Insurance and Banking Companies,* 41 U. Cin. L. Rev. 275, 276 (1972). As stated by the bank commissioner in his report to the superior court: "The depositor in the liquidation of a mutual savings bank receives a share of the surplus [which] is commonly called a 'windfall.' Receiving the 'windfall' is something the depositor neither earned or bargained for." This is because the depositor in a modern mutual savings bank is *not* similar to the stockholder of a commercial bank or of any other commercial enterprise. *See Cogswell v. Bank,* 49 N.H. 43 (1879). In total contradistinction to the typical corporate shareholder, the mutual savings bank depositor demands total safety and liquidity in his investment for a fixed rate of return.

Because of the basic dissimilarity of mutual savings bank

depositors to shareholders of a corporation, cases such as *Dow v. Northern Railroad,* 67 N.H. 1, 36 A. 510 (1886), and *Perkins v. New Hampshire Power Co.,* 90 N.H. 534, 11 A.2d 811 (1940), relied upon by the association, are not in point. Those cases deal with the right of corporate shareholders who dissent from a merger plan to have their shares appraised and paid for in cash. But shareholders in commercial banks and other corporations are entitled by statute to a cash option. RSA 388:13; RSA 294:76-77.

Nor do we find the association's equal protection argument persuasive because of the fundamental differences between a mutual savings bank depositor and a corporate investor. *See, e.g., Marine Corps League v. Benoit,* 96 N.H. 423, 78 A.2d 513 (1951). Only "persons similarly situated are guaranteed similarity of treatment" by the law. *Welch Co. v. State,* 89 N.H. 428, 431, 199 A. 886, 889 (1938), *aff'd* 306 U.S. 79, 83 L. Ed. 500, 59 S. Ct. 438 (1939).

We do not think that the merger plan giving the mutual bank depositors stock in the new trust company for their ownership of the surplus is inequitable, as urged by the association. In a recent case dealing with a similar bank consolidation, we made the following observation which is pertinent to this case: "So far as the depositors are affected, their interest in the surplus of the savings bank is preserved by converting it to an interest in the equity of the trust company which will own the banking assets formerly held by the savings bank." *Manchester Sav. Bank v. N.H. Ass'n of Sav. Banks,* 110 N.H. 341, 347, 266 A.2d 838, 842 (1970). The bank commissioner's report states: "If the owner-depositor is given and exercises the option of taking of cash and depletes the surplus it would render the Plan ineffective." In view of the fact that any form of payment to the depositors for their amorphous "ownership" rights in the surplus is veritably a "windfall", we cannot view as constitutionally impermissible the forced exchange of those rights for stock in the new, consolidated bank found by the superior court to promote the "public convenience and advantage." RSA 388:5; *cf. Manchester Sav. Bank v. N.H. Ass'n of Sav. Banks supra; Gordon v. Public Service Co.,* 101 N.H. 372, 143 A.2d 428 (1958).

Finally, we note that the charter of City Savings provides

in section 6 that *"all profits* arising from said business shall be equitably divided among the depositors at such times and in such manner as the Trustees may determine . . . ." (emphasis added). The trustees have determined in this case to divide the profits via a distribution of stock of the new bank. We have been given no convincing reason why the charter should not control the rights of depositors in this instance as it does in others. *See Bank Commissioners v. Banking Co.,* 74 N.H. 292, 67 A. 583 (1907); 8 A. Michie, Banks and Banking ch. 16, §13 (rev. ed. 1971).

*Exceptions overruled; remanded.*

All concurred.